STATE OF MONTANA, Plaintiff and Respondent, v. EDWARD FRANK SHAMBO, Defendant and Appellant.

No. 9858.

Submitted January 16, 1958. Decided March 10, 1958.

322 Pac. (2d) 657.

William N. Geagan, Butte, for appellant.

Forrest H. Anderson, Atty. Gen., Robert J. Emmons, Asst. Atty. Gen., Maurice F. Hennessey, County Atty., Robert J. Holland, Deputy County Atty., Butte, for respondent. Robert J. Holland and Robert J. Emmons argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was found guilty of the infamous crime against nature and sentenced to imprisonment for a period of thirty years. He has appealed from the judgment of conviction and from the order denying his motion for a new trial.

The information charged that the offense was committed against a named boy, who was at the time eight years of age. It was alleged to have been committed by thrusting the penis of the defendant into the anus of the boy.

The principal contention made on the motion for a new trial was that the verdict and judgment are contrary to the evidence. The question of the sufficiency of the evidence to warrant a conviction was also raised by motion for a directed verdict at the close of the state's case. The verdict must stand or fall upon the testimony of the boy and upon that alone. Defendant offered no evidence in his behalf.

According to the story of the boy, the crime took place at his home. He was living with his parents, two brothers and two sisters on Copper Street in Butte.

On the night of March 10, 1957, the prosecuting witness went to bed in the apartment occupied by himself and the other members of the family. His father and mother occupied a separate room in the apartment. At about 2 o'clock on the morning of March 11, the defendant went to the apartment in which the boy lived in company with the boy's father, Harry Contrell, and Donald Bissonette. They all went into the kitchen of the apartment which was across the hall from the bedroom of the boy.

The boy's father went to bed shortly after arriving at the apartment and the defendant, Mr. Contrell and Bissonette remained in the kitchen drinking beer and singing and playing a guitar. The boy testified that at some time in the early morning hours of March 11 he was awakened by the defendant who then and there perpetrated the alleged crime upon him.

The boy on two or three occasions in his testimony referred to the fact that defendant put his peepee in the boy's butt. At one point he testified that defendant wet on him and on another occasion he testified that defendant peepeed in his butt. He was asked: "Q. How did he put it into your butt—up into your butt?" An objection as calling for a conclusion was overruled and the witness answered, "Yes."

It is from this testimony alone that the verdict must stand or fall. Shortly after the act occurred the boy related what happened to him to his mother. However, before doing so he dressed himself, put on his shoes, and went into his mother's bedroom. His mother did not examine him. There was no physical examination made by any doctor and even the boy did not testify that he had no night clothes on at the time. The matter was not submitted to the county attorney until a week after the alleged offense. The boy seems to have used the words "in" and "on" indiscriminately when referred to being wet on by the defendant. Once he said that defendant wet on him and at another time he testified that defendant peepeed in his butt.

Under our statute there must be penetration before a person ██ can be convicted of the infamous crime against nature.

R. C. M. 1947, sec. 94-4119 provides: "Any sexual penetration, however slight, is sufficient to complete the crime against nature." There is nothing in this record from which the jury was warranted in finding that there had been any penetration. The most that defendant could have been convicted of under this evidence is an attempt to commit the crime of sodomy under section 94-4710. Wharton v. State, 58 Ga. App. 439, 198 S. E. 823; 1 Wharton's Criminal Law (12th Ed.), sec. 759.

The case of State v. Wilson, 361 Mo. 78, 233 S. W. (2d) 686, 687, was one where the prosecuting witness described the act in practically the identical language used by the prosecuting witness here. In that case the boy stated that defendant, "took my clothes off and stuck his peepee in my butt." That case differed from this in that Jimmy, the boy in that case, complained to his parents "about a pain in his rectum." The parents examined him and they testified according to the court's opinion that they "put salve on him. He was red and sore." The court in that case held that the evidence of penetration was sufficient circumstantially, to justify submission of the question to the jury as to defendant's guilt of the crime against nature, but did so because of the inflamed and sore condition of the rectum of the victim along with his testimony. The court on that point, said :

"Recognizing the significance of the childish language used by Jimmy in his testimony, we consider his answers were apt in describing the perversive sexual conduct of defendant. Jimmy's statement of the circumstances attending defendant's act gives support, circumstantially, to Jimmy's direct evidence of completion of the crime by actual penetration. Jimmy, it seems, did not see defendant's penis, and Jimmy answered in effect, when pressed upon cross-examination, that he did not know defendant effected a penetration with the penis, but the penetration was not by defendant's finger because Jimmy saw both of defendant's hands. Jimmy's rectum became sore and inflamed. We believe the evidence was substantial and sufficient to justify the submission of the question of defendant's guilt to the jury."

Since the cause must be remanded for a new trial other questions must be given consideration. Defendant contends that the court erred in holding that the boy was competent to testify.

Under section 93-701-3, subd. 2, persons cannot be witnesses when "under ten years of age who appear incapable of receiv-

ing just impressions of the facts respecting which they are examined, or of relating them truly.''

Here the judge in the absence of the jury interrogated the ▮ boy generally with reference to the consequences that he expected would follow in the event he did not tell the truth. The court then determined that he was competent to testify, but indicated that if during the trial it developed that the witness did not know what he was talking about he would not hesitate to reverse his ruling.

The judge did not interrogate the witness as to the facts regarding the crime and concerning which he was about to testify; this the defendant contends was error. With this we do not agree. It was competent for counsel for defendant to interrogate the boy further if he desired, but it was not incumbent upon the judge to do any more than to satisfy himself that the witness was competent. Nothing developed during the trial that should have caused the judge to reverse his ruling and declare the witness incompetent as a matter of law.

The question is largely one that rests within the discretion of ▮▮ the trial judge and his conclusion will not be interfered with unless there has been an abuse of discretion. See People v. Trolinder, 121 Cal. App. (2d) 819, 264 Pac. (2d) 601; People v. Arcia, 85 Cal. App. (2d) 127, 192 Pac. (2d) 31, and People v. Terry, 99 Cal. App. (2d) 579, 222 Pac. (2d) 95. While there were some minor inconsistencies in his testimony, this is nothing more than will be found with many witnesses who are not accustomed to the excitement attendant upon court proceedings. Such inconsistencies were for the jury to consider. People v. Slobodion, 31 Cal. App. (2d) 555, 191 Pac. (2d) 1. The court did not err in accepting the testimony of the boy and in ruling that he was a competent witness. The weight of his testimony was of course for the jury.

Another contention of defendant must be considered. The ▮ boy's mother, over objection, was permitted to recite what he told her when he complained to her about what defendant

had done. The rule is that it is proper for the person to whom complaint was made to testify to the fact that a complaint was made and may state the time, place and circumstances under which it was made but not what was said concerning the details of the crime. State v. Smith, 3 Wash. (2d) 543, 101 Pac. (2d) 298.

Here the boy's mother was permitted to state that he said to her "Frank Shambo had put his peepee in his butt."

There is a well-established exception to the rule above-stated which permits the entire statement to be made when it constitutes a part of the *res gestae*. The rule was recognized in State v. Smith, supra, and other authorities therein cited. And see Soto v. Territory, 12 Ariz. 36, 94 Pac. 1104. The principle of law which may be resorted to in a proper case is embodied in our statute, section 93-401-7, which reads: "Where, also, the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act or omission is evidence, as part of the transaction."

Here the complaint made by the boy to his mother was not made contemporaneously with the act complained of nor does it appear to have been made in a state of excitement or shock. The boy dressed himself before reporting the incident to his mother. Just how much time elapsed between the act and the complaint cannot be ascertained from the record. The complaint under the circumstances was but the narrative of a past transaction and did not come within the statutory rule as being a part of the transaction itself or evidence of it. Narratives of a past transaction do not come within the *res gestae* rule. Hulse v. Northern Pac. Ry. Co., 47 Mont. 59, 130 Pac. 415; Wilson v. Davis, 110 Mont. 356, 103 Pac. (2d) 149.

But the state contends that the declaration in this case constitutes a spontaneous declaration or outburst and hence was a part of the *res gestae* on that account.

As a predicate for this contention it is asserted that the mother testified to sufficient facts to make this declaration

admissible when she stated that her son, ''had an awful look on his face'' when he reported the incident to her. It is contended that this statement makes this case parallel to that of Beausoliel v. United States, 1939, 71 App. D. C. 111, 107 F. (2d) 292, 294, where the witness testified that the person making the complaint had at the time ''a peculiar expression on her face.''

The cases are practically parallel on the facts, but we are not impressed with the conclusion arrived at in the Beausoliel case or the reasoning on which it was based. To begin with, the statement in this case that the boy ''had an awful look on his face'' is but a meaningless conclusion.

Just what did the witness mean by an ''awful look''? Different persons might have different concepts of the meaning of the word ''awful'' as applied to a person's looks.

It may be that upon another trial further evidence may be introduced tending to show that the boy, when making the complaint, was in a state of excitement or shock so as to render his statements a part of the *res gestae,* but if the evidence is the same as we have before us here the declaration as to the details of what was said by the boy to his mother relating to the crime should be excluded.

Other contentions have been made by defendant, but since it **is not likely that they will** arise upon another trial we shall not consider them.

The judgment is accordingly reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and ADAIR, and HON. WILLIAM F. SHALLENBERGER, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.