(578 P.2d 1147)

No. 49,302

STATE OF KANSAS, *Appellee,* v. JAMES KILPATRICK, *Appellant.*

Opinion filed June 2, 1978.

*William Cather* of William Cather, Chartered, of Wichita, for the appellant.

*Stuart W. Gribble,* assistant district attorney, *Brad Bergman,* legal intern, *Vern Miller,* district attorney, and *Curt T. Schneider,* attorney general, for the appellee.

Before SPENCER, P.J., REES and MEYER, JJ.

SPENCER, J.: Defendant was convicted of two counts of indecent liberties with a child and he appeals. Count I charged indecent liberties by sexual intercourse [K.S.A. 1977 Supp. 21-3503(1)(a)] with Kathy Hall, defendant's stepdaughter. Count II charged indecent liberties by lewd fondling or touching [K.S.A. 1977 Supp. 21-3503(1)(b)] with Janice Kilpatrick, defendant's natural daughter. At the time of the incidents both girls were residing in the family home with defendant, his wife, and three other children. Kathy was fifteen years of age and Janice thirteen years of age.

Nothing is to be gained by reviewing the details of the various

sexual encounters alleged to have taken place. Suffice it to say that the case for the State was for the most part, and of necessity, based on the testimony of Kathy and Janice, and of a younger sister Jackie. The testimony at trial was in sharp conflict. Defendant took the stand and expressly denied having taken indecent liberties with any of the girls residing in his home. His testimony was corroborated in substantial part by his wife Alva and by Don Hall, Kathy's younger brother who also resided in the home. There was also testimony from Kathy that she hated defendant and wanted very much to live with her natural father, and that Janice on the other hand was most unhappy with her stepmother.

Defendant has specified six issues on appeal, among which is the prejudicial effect of references made to polygraph tests. In her direct examination Kathy testified that, when she was in the sixth grade, defendant's natural daughter Tammy came to live at the Kilpatrick home after alleging sexual relations with her stepfather and that Tammy had told Kathy that she could get whatever she wanted by making that kind of allegation. The record reveals that shortly thereafter Kathy made such an allegation against defendant, but that investigation failed to substantiate her charges and she was returned to the family home. In this connection, Kathy volunteered the following:

"Because in the sixth grade I tried to do the same thing I'm doing right now and it didn't work. They took a polygraph test and I failed it, and it didn't go any farther than this."

After Kathy had left the stand, Janice was called to testify and, on redirect examination, the following took place:

"Q. [By the prosecutor] Did you take a polygraph or lie detection test with respect to this incident you have told us about occurring in December?
"A. Yes."

Defendant's objection was sustained and the court admonished counsel:

"I am going to declare a mistrial if you bring this up again. I think that is almost prejudicial error."

Outside the presence of the jury, the following occurred:

"THE COURT: I'd like to know, Mr. Tatum, when a lie detector has ever been admissible in a court of law?
"MR. TATUM: To my knowledge, it never has.

"THE COURT: It never has, and a lie detector in regard to Kathy Hall came up on direct examination and that is why Mr. Dodd was allowed to go into it on cross examination.

"Counsel well knows, well knows, I am sure, that that is a very prejudicial area, and just because we have sat here and gone over items without Bly hearings and without time and place, or anything else, doesn't mean that we should take advantage of this entire situation.

"I'll tell you the truth, this is the first time in twelve years I have heard that question asked of a witness. I don't care whether I agree or don't agree with the procedures that are necessary for the trial of a lawsuit, but they are there and they are going to be followed. I do not like it when counsel tries to take advantage of it."

The rule is well established that, in the absence of a stipulation between the parties, the results of a polygraph examination are not admissible in evidence. *State v. Blosser,* 221 Kan. 59, 558 P.2d 105 (1976). This rule was known, or most certainly should have been known, by the prosecutor and it was clearly misconduct for him to inquire of Janice as to whether she had taken such a test. Misconduct of counsel does not necessarily require a new trial unless it appears to have been so prejudicial as to deprive the defendant of a fair trial. *State v. Hamilton,* 222 Kan. 341, Syl. 3, 564 P.2d 536 (1977).

Although it is not within the province of this court to weigh the evidence or to pass upon the credibility of witnesses, we must take note of the fact that, as revealed by the record, the evidence against this defendant was such that the jury might reasonably have found either guilt or innocence. To have put before the jury the additional fact that Kathy had been given a polygraph test and "failed it, and it didn't go any farther than this" (*i.e.,* there was no prosecution by the State), followed shortly thereafter by the inquiry of Janice as to whether she had taken a polygraph test to which she replied, "Yes," followed by the affirmative act of prosecution, was in effect to reveal to the jury the results of the test given Janice. The trial judge noted that the question propounded by the prosecutor and the answer given by the witness were "almost prejudicial error," and in our judgment it was prejudicial error as it may well have been the deciding factor in the minds of some, if not all, of the jurors. The trial judge did not admonish the jury to disregard the reference made to the polygraph tests and to have done so might only have served to emphasize the fact. However, because of this glaring misconduct on the part of the prosecution, we must conclude that defendant was denied a fair trial.

Defendant claims that the acts related by Kathy and Janice were physically impossible and that the testimony of one or all of the girls was the result of their being coached by a social worker. These are determinations to be made by the jury, whose function it is to weigh the evidence and pass upon the credibility of witnesses. A verdict based upon substantial competent evidence will not be disturbed on appellate review. *State v. Holt,* 221 Kan. 696, Syl. 3, 561 P.2d 435 (1977).

Defendant claims that the State withheld evidence which would tend to show the innocence of defendant. However, the record indicates that defendant had access to all of the physical evidence available, including the medical report which was introduced as a defense exhibit, and there does not appear to have been any other physical evidence or to have been any suppression of evidence.

Defendant urges error in that the information failed to specify a date certain, other than December, 1975, for the incident with Janice. In *State v. Wonser,* 217 Kan. 406, 537 P.2d 197 (1975), the court held that, since time is not an indispensible ingredient of the offense of indecent liberties with a child, the precise time need not be stated in the indictment or information. It is sufficient if it be shown that the time of the offense was within the statute of limitations.

Finally, it is contended that K.S.A. 1977 Supp. 21-3503(1)(b) is so vague and indefinite that it violates due process. We find no merit in this contention. See *State v. Conley,* 216 Kan. 66, 531 P.2d 36 (1975); *State v. Kirby,* 222 Kan. 1, Syl. 1, 563 P.2d 408 (1977); *State v. Wells,* 223 Kan. 94, 573 P.2d 580 (1977); *State v. Kleber,* 2 Kan. App. 2d 115, 118, 575 P.2d 900 (1978).

Judgment is reversed and this cause is remanded with instructions to grant defendant a new trial.