No. 13896

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

THE STATE OF MONTANA,

             Plaintiff and Respondent,

     -vs-

MERRILL CAMPBELL,

             Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial District,
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        J. Brian Tierney, Butte, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mike McGrath argued, Assistant Attorney General, Helena,
         Montana
        John G. Winston, County Attorney, Butte, Montana

---

                        Submitted:  April 28, 1978
                          Decided:  JUN - 8 1978

Filed: JUN      1978


        Thomas J. Kearney
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court:

Defendant appeals from the judgment of conviction entered by the District Court, Silver Bow County, after a jury found him guilty of aggravated assault.

On November 16, 1976, Tom McKenzie, a welfare worker with the Department of Social and Rehabilitation Services of the State of Montana, went to the Head Start Program in Butte to follow up a report of child abuse. McKenzie spoke with Pat Sullivan, Head Start Director, and observed Gina Houser, a four year old girl who had been beaten. That same day, November 16, 1976, McKenzie took Gina Houser to Dr. Dennis McCarthy, who examined the child and concluded that her injuries had been inflicted by another.

The child's natural mother, Cheryl Houser Campbell, contacted the Head Start School at 2:00 p.m. on November 16, 1976, to ascertain why Gina had not returned on the school bus. The school advised the mother the welfare department had taken custody of Gina and three other children of Cheryl Houser Campbell. The mother told the welfare department that Gina had fallen from her tricycle. The welfare department, however, advised Cheryl Houser Campbell that Gina's bruises were not caused by a fall, and directed the mother to the Silver Bow County attorney.

At 3:00 p.m., November 16, 1976, Cheryl Houser Campbell went to the county attorney and stated that Gene Houser, her ex-husband, had beaten Gina. Later that evening four of Cheryl Houser Campbell's daughters, Gina and Rhonda Houser, and Janet and Kathy Campbell, were placed in foster care by Tom McKenzie.

On the evening of the placement of the children in foster care, Tom McKenzie spoke by long distance telephone with Gene Houser. McKenzie verified that Gene Houser was in Los Angeles, California, on the day of the beating and thus could not have beaten the girls.

The next day, November 17, 1976, Cheryl Houser Campbell was charged in justice court with giving false information to a police officer and endangering the welfare of her children by her failure to seek medical aid for them. The mother was placed in jail. She then told authorities that defendant, Merrill Campbell, had spanked the children on November 15, 1976, with a bed slat. The charges against the mother were later dropped and on December 6, 1976, the State filed an Information charging defendant with the aggravated assault of Krista Flanigan, Cheryl Houser Campbell's fifth daughter, and Gina Houser on November 15, 1976.

The four minor children, including Gina, were immediately placed by the welfare department in the custody of Cheryl Houser Campbell. Krista Flanigan, age six, was placed in a Deer Lodge Montana, foster home and talked to her mother by telephone only once during the six months prior to defendant's trial. Krista identified defendant as the person who had beaten the girls with a wooden plunger handle. During the investigation Krista picked the handle from among three sticks the deputy county attorney showed her.

At his arraignment, defendant moved the court to order that defendant be allowed to submit to a polygraph test. No arrangements were made for a polygraph test, however.

- 3 -

Defendant's trial commenced on April 20, 1977. During the state's case, a wooden plunger handle was admitted as an exhibit, over defendant's objection. Also over defendant's objection, the court allowed two Head Start workers and a police officer to testify to statements made by four year old Gina Houser.

At the close of the state's case, defendant moved the court to dismiss the Information or in the alternative, to direct a verdict for defendant on the grounds that the state's evidence was insufficient as a matter of law and upon the grounds that certain witnesses' testimony was prejudicial to defendant. The motion was denied, the jury returned a verdict of guilty and the district judge sentenced defendant to five years in the state prison.

Defendant raises seven issues in his appeal from the District Court judgment:

1. Did the court err in failing to order a polygraph test after defendant had requested one?

2. Is the evidence sufficient to support the verdict?

3. Did the court err in admitting the wooden plunger handle into evidence?

4. Did the court err in allowing three witnesses to testify to statements made by four year old Gina Houser?

5. Did the court err in limiting the testimony of a defense witness?

6. Did the state create reversible error when it asked a rebuttal witness for defendant's general reputation in the community?

7. Did the state improperly introduce evidence of other crimes committed by defendant?

The district judge committed reversible error when he allowed the two Head Start teachers and the police officer to testify, over defendant's objection, to statements made by four year old Gina Houser to the teachers. The alleged statement of Gina that defendant had beaten her and her sister with a wooden plunger handle went to the very facts which the state was trying to prove, was a statement offered to prove the truth of the matter asserted and was therefore hearsay. The State concedes that the statement was not admissible within the res gestae rule because the statement, made at least 24 hours after the beating, " * * * was not made contemporaneously with the act complained of nor does it appear to have been made in a state of excitement or shock. * * * Narratives of a past transaction do not come within the res gestae rule." State v. Shambo, (1958), 133 Mont. 305, 309, 310, 322 P.2d 657.

It is possible that Gina Houser, although only four years old at the time of trial, was competent to testify. Section 93-701-3(2), R.C.M. 1947, the statute in effect at the time of defendant's April 20, 1977, trial, excluded from the general rule that all persons are qualified to testify:

> "Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."

A four year old witness is not necessarily too young to perceive correct impressions of the facts he observed, to remember those impressions, to communicate what he saw, and to understand his duty to tell the truth. Other courts have held that children four years old or younger were competent to testify. Love v. State, (1974), 64 Wisc.2d 432, 219 N.W.2d 294, 298; Fields v. State, (Tex.Crim.App. 1973), 500 S.W.2d 500, 502; Hill v. Skinner, (1947), 81 Ohio App. 375, 79 N.E.2d 787, 789. The question of whether

- 5 -

the child is competent to testify is a matter addressed to the sound discretion of the trial judge.  State v. Shambo, supra.

In this case, if Gina Houser had been qualified as a witness, had testified that defendant had beaten her and her sister, and then had her credibility impeached by defense suggestions that since the beating she had been improperly influenced, the state might well rehabilitate her by introducing the alleged statements to the Head Start workers as prior consistent statements.  Allen v. Moore, (1975), 167 Mont. 330, 338, 538 P.2d 1352.  Gina, however, was not a witness, nor was she even present at the trial.  The testimony concerning Gina's statements was not offered to corroborate the testimony of Gina, who was never a witness, but was introduced by the state to corroborate the testimony of six year old Krista Flanigan.

The testimony as to Gina's statements corroborated and strengthened Krista Flanigan's testimony and was so damaging to defendant's case that we are not convinced of the state's contention that the admission of the testimony was harmless. Upon remand, the District Judge shall examine the child's competency to testify as it relates to the time of the new trial, and not to the time when the crime occurred nor to the time of the previous trial.  State v. Garner, (1977), 116 Ariz. 443, 569 P.2d 1341, 1344.  The child may testify if the judge correctly determines her to be competent.  If the judge rules that Gina is not competent to testify, testimony concerning statements she made to others implicating defendant in the crime are also inadmissible. Coleman v. Higgins, (1960), 137 Mont. 222, 226, 351 P.2d 901.

Although this cause is reversed and remanded on the basis of this issue alone, we shall discuss two other issues raised by defendant for the purposes of retrial. The District Court did not err in failing to order that defendant be given a polygraph test. Defendant urges that Montana should adopt the rule set forth in State v. Stanislawski, (1974), 62 Wis. 2d 730, 216 N.W. 2d 8, wherein the Wisconsin Supreme Court set forth criteria for admissibility of polygraph evidence.

The Montana rule is that the results of polygraph examinations are not admissible as evidence in a criminal trial. State v. Hollywood, (1960), 138 Mont. 561, 358 P.2d 437; State v. Cor, (1964), 144 Mont. 323, 396 P.2d 86. We save the issue of whether this Court shall adopt a Stanislawski or similar test for admissibility of polygraph testimony for a case in which the admission or exclusion of polygraph evidence determines the outcome of the case. We do note, however, that defendant could not satisfy the Stanislawski test. The Stanislawski case merely establishes that the use of the polygraph is clearly within prosecutorial discretion; that the test requires a prior written stipulation by all parties, including the prosecution, and that, notwithstanding the stipulation, admissibility of the test results is subject to the sound discretion of the trial court. Because neither the prosecution nor the district court concurred in the admission of polygraph evidence, the Stanislawski test was not met.

Nor did the court err in admitting the wooden plunger handle into evidence. Physical evidence may be introduced and received into evidence after proof is made connecting it with the accused or the crime. State v. Best, (1972), 161 Mont. 20, 25, 503 P.2d 997. Krista Flanigan testified that she and her sister were beaten by defendant and that the plunger handle was

the weapon defendant used in the beating. Officer Miller testified that he had found the plunger handle under the children's bed, had placed his initial on the handle and had stored the handle in the county attorney's office. The officer testified the handle was in the same condition at trial, as it was on the day he received it. Defendant asserts that, because Cheryl Houser Campbell emphatically asserted that a bed slat and not a plunger handle was the weapon used in the beating, the plunger handle should not have been admitted into evidence. Because the state presented sufficient evidence connecting the weapon with the crime and establishing the chain of custody, the contrary testimony of Cheryl Houser Campbell went only to weight and not to admissibility.

The judgment of the District Court is reversed and this cause is remanded for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.