No. 84-178

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ANTHONY ROGERS,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John L. Adams, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana

Submitted on Briefs: September 27, 1984

Decided: November 15, 1984

Filed: NOV 15 1984

Ethel M. Harrison
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant Anthony Rogers appeals his conviction of felony assault and sexual intercourse without consent following a jury trial in the Yellowstone County District Court. We affirm the conviction.

Stella Smith left her two daughters, Lanny Smith, age four, and Estelle Smith, age two, in the care of defendant and one of his roommates, Claudia Best, while she left town for several days. The girls remained at defendant's house for four days, June 6, 1983 through June 10, 1983. On June 10, Stella's brother, Kim Krecklaw, and sister-in-law, Lori Fresonke, went to defendant's house and returned home with the girls. While bathing Estelle, Lori noticed bruises on her lower back. Lori then called the Yellowstone County Department of Welfare.

The children were examined that evening by Dr. John Sauer, Chairman of the Yellowstone County Sexual Abuse Team. At trial, Dr. Sauer testified that he found several bruises on Estelle's lower back, the characteristics of which indicated a significant amount of force had been used on the child. He concluded she had been physically abused. His examination of Lanny revealed several abnormal conditions in the vaginal area consistent with the insertion or attempted insertion of a finger into the vagina or the fondling of the vaginal opening. He concluded there had been direct sexual or physical contact. During the examination, Lanny twice volunteered that defendant had hurt her with his hand in her vaginal area.

Lanny and Estelle were then placed in a receiving home.

Detective Frank Brun, experienced in sexual abuse and incest cases, and Connie Harvey, social worker, conducted a videotaped interview of Lanny on June 15, 1983. Lanny refers to her vaginal area as her pee pee. Near the beginning of

2

the interview, Connie asked Lanny if anyone had ever hurt her pee pee. Lanny replied that yes, Tony had done so. Tony is the name Lanny calls defendant. During the interview, Lanny also demonstrated on anatomically correct dolls how defendant had hurt her by placing her finger in the doll's vagina. This demonstration was later repeated twice at trial.

Detective Brun interviewed defendant twice, July 1, 1983 and July 30, 1983. An information charging defendant with two counts, sexual intercourse without consent and felony assault, was filed September 19, 1983. A jury trial was held in January of 1984. Defendant was convicted and sentenced to twenty years on the sexual intercourse without consent charge and five years on the assualt charge, the sentences to run concurrently.

At the trial, defendant denied committing either felony. He also stated that he was never alone with the girls for more than a few minutes at a time. However, his roommates, Claudia Best and Wayne Hartford testified that defendant had been alone with the girls for extended periods of time on several occasions. Claudia also testified that she had noticed bruises on Estelle's back while the girls were at the house.

At defendant's request, the trial judge examined Lanny for witness competency and found her competent to testify. There is no record of that examination. In his brief, defense counsel states that the competency examination was very similar to the preliminary questions asked of Lanny at trial. Responding to those questions, Lanny told the prosecuting attorney her age, the date of her birthday, how old she would be then, counted to ten and said the alphabet. Then the following dialogue occurred:

"Q. Can you tell me what this is?

"A. Cup.

"Q. And what color is the cup?

3

"A. Yellow.

"MS. O'CONNOR: Let the record reflect that I am holding a yellow cup.

"Q. If I said that this cup was green, would I be telling the truth or a lie?

"A. A lie.

"Q. When I say that it's yellow, am I telling the truth or a lie?

"A. The truth.

"Q. What color is this piece of paper?

"A. Pink.

"Q. If I said that this piece of paper was brown, would I be telling the truth or a lie?

"A. A lie.

"Q. That's right. When you are in this room, do you have to tell the truth or a lie?

"A. Truth.

"Q. Why?

"A. 'Cause it's very important.

"Q. That's right. It's very important. Let me put you down one more time." (Transcript, pp. 176-177)

Lanny testified while sitting on the prosecuting attorney's lap. Cross-examination was conducted in the same manner, although defense counsel had been offered the opportunity to hold Lanny in his lap during cross-examination. In addition to telling the jury what defendant had done to her, Lanny also testified that defendant had hurt her sister, Estelle, by spanking her.

Detective Brun also testified at trial. On direct examination, Brun set forth his experience with sexual abuse cases, stated that defendant had denied harming either child and recounted portions of the videotaped interview with Lanny. On cross-examination, after learning that Brun had not recently reviewed his notes on the case, defense counsel attempted to refresh Brun's recollection with the transcript of the videotaped interview. In an apparent effort to discredit Lanny's testimony at trial, defense counsel began

4

reading verbatim from the transcript. Following objections by the prosecuting attorney, defense counsel ultimately entered the transcript into evidence. Subsequently, the prosecution offered the videotape as the best evidence of that transcript. The videotape was admitted and shown to the jury.

Defendant raises the following issues on appeal of his convictions:

1. Did the trial court properly declare Lanny competent to testify?

2. Did the trial court properly admit a videotaped interview of Lanny?

Rule 601, Mont.R.Evid. states:

"Rule 601. Competency in general; disqualification.
(a) General rule competency. Every person is competent to be a witness except as otherwise provided in these rules.
(b) Disqualification of witnesses. A person is disqualified to be a witness if the court finds that (1) the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or (2) the witness is incapable of understanding the duty of a witness to tell the truth."

This rule has no age requirement.

Prior to testifying, Lanny illustrated to both the judge and the jury that she knew the difference between the truth and a lie. She also illustrated that she knew the importance of telling the truth.

Lanny's testimony was basically consistent with the reports she had given to Dr. Sauer, Detective Brun and Connie Harvey regarding the incidents. The inconsistencies mostly involved dates and times, details about which any witness may become confused. Those inconsistencies do not affect a witness' competence. Rather, they are for the jury to consider when determining a witness' credibility. State v. Shambo (1958), 133 Mont. 305, 309, 322 P.2d 657, 659.

5

Whether a child is competent to be a witness is a determination left largely to the discretion of the trial court. State v. Campbell (1978), 176 Mont. 525, 529, 579 P.2d 1231, 1233. There was no clear abuse of that discretion here.

Defendant further complains that allowing Lanny to sit on the prosecuting attorney's lap while testifying was prejudicial. Specifically, defendant alleges that it prevented him from conducting an adequate cross-examination. However, defendant cites no specific example of prejudice. In fact, he was able to conduct a detailed cross-examination of Lanny. "[I]n a criminal case, if prejudice is alleged, it will not be presumed, but it must be established from the record that a substantial right was denied. (cite omitted)." State v. Dupre (Mont, 1982), 650 P.2d 1381, 1386, 39 St.Rep. 1660, 1666. The record in this case shows no prejudice.

Further, Rule 611, Mont.R.Evid. states in pertinent part:

> "Rule 611. Mode and order of interrogation and presentation; re-examination and recall; confrontation.
> (a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

Pursuant to this rule, the trial court was well within its discretion in allowing Lanny to sit on the prosecuting attorney's lap. That posture assisted in directing Lanny's attention to the questioning and provided comfort to her during a difficult and unfamiliar experience.

Turning to the second issue, defendant contends that it was reversible error for the trial court to admit the videotape of the interview into evidence because he was not present to confront and cross-examine Lanny. The interview took place several weeks prior to defendant's arrest.

6

Defendant relies on sections 46-15-401 and -402, MCA, to support his position.

> "46-15-401. When videotaped testimony admissible. For any prosecution commenced under 45-5-502(3), 45-5-503, 45-5-505, or 45-5-613, the testimony of the victim, at the request of such victim and with the concurrence of the prosecuting attorney, may be recorded by means of videotape for presentation at trial. The testimony so recorded may be presented at trial and shall be received into evidence. The victim need not be physically present in the courtroom when the videotape is admitted into evidence.

> "46-15-402. Procedure at videotaping. (1) The procedural and evidentiary rules of the state of Montana which are applicable to criminal trials within the state of Montana shall apply to the videotape proceedings authorized by this part.

> "(2) The district court judge, the prosecuting attorney, the victim, the defendant, the defendant's attorney, and such persons as are deemed necessary by the court to make the recordings authorized under this part shall be allowed to attend the videotape proceedings."

These sections apply only to videotaped testimony to be used in lieu of testimony by the witness at trial. See the February 8, 1979 minutes of the House Judiciary Committee and the January 29, 1979 minutes of the Senate Judiciary Committee regarding Senate Bill 197. Here, Lanny was present and testified at trial. Defendant's rights to confrontation and cross-examination were preserved.

It was defendant who moved to have the transcript of that interview admitted into evidence. Once that transcript was admitted, it was totally within the province of the trial court to allow into evidence what it considered to be a more accurate version of the same thing. "The Federal Rules of Civil Procedure [as well as Montana's rules] provide for the taking of depositions by other than stenographic means and presuppose their use in court. (citation omitted) No valid distinction exists between the use of a deposition taken by video tape and the use of a statement taken by video tape." Hendricks v. Swenson (1972), 456 F.2d 503, 505.

Moreover, it was defendant who moved to have the transcript of that interview admitted into evidence.

7

Pursuant to Rule 1002, Mont.R.Evid., once the transcript was admitted, the videotape itself could be admitted as the "best evidence" of that transcript.    See, for example, Duncanson v. State (Ind. 1979), 391 N.E. 2d 1157, where the court held a tape recording to be the best evidence of its own contents.

Defendant's conviction is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices