No. 84-314

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

D. B. S.

Defendant and Appellant.

---

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable James M. Salansky, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

K. M. Bridenstine argued, Polson, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
Joe Roberts argued, Asst. Atty. General, Helena
Ted O. Lympus, County Attorney, Kalispell, Montana

---

Submitted:   March 21, 1985

Decided:   May 28, 1985

Filed:   MAY 2 8 1985

*Ethel M. Harrison*

---
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

The defendant appeals from a conviction of incest with his natural-born daughter following a jury trial in the District Court of Flathead County, State of Montana.

The victim was born on December 6, 1979, to the defendant and K.H. who establised a common-law marriage. In September of 1982, K.H. petitioned for dissolution of marriage. Between the approximate dates of September, 1982 and May of 1983, the victim was in the custody of her father, the defendant. During this time, her mother, K.H. worked out of state. In May of 1983, K.H. returned to Montana and began exercising a two week visitation with the victim. The defendant and K.H. had discussed modifying the divorce decree to provide for joint custody.

On October 27, 1983, while K.H. was driving the victim to a day care facility, the victim related to her the facts which formed the basis of the charge. Later, the victim related substantially the same story to Tom Best of the Family Court Services Department, Maxine Lamb of the Flathead County Sheriff's Office and Ann Anderson of the Flathead County Welfare Department.

An information charging the defendant with the offense of incest, a felony, was filed on December 12, 1983. The defendant entered a plea of not guilty and filed a motion to dismiss the information for lack of specificity as to the date of the alleged crime. On February 6, 1984, the defendant filed a motion in limine to suppress the testimony of the alleged victim. The court denied both motions by consolidated order dated February 27, 1984. On March 2, 1984, following a hearing on the child's competency, the

District Court concluded that the victim was qualified to serve as a witness.

A jury trial was held on March 5, 1984. At the trial, the victim testified and demonstrated the incident by reference to male and female anatomical dolls. The victim stated that her father had "made me suck on his weenie" and that "cream" had come out of her father and went into her mouth. The victim was not precise as to the time of the incident, but testified it occurred in her father's bedroom in the ranch house.

At the trial, the defendant denied committing the felony. Robert Evans, a private investigator, testified that he had looked into defendant's background and the current case. Evans testified that he believed the defendant was being truthful. Three women acquaintances of the defendant also testified to the defendant's general character and reputation in the community. The final witness, Dr. Paul Wert, a clinical psychologist from Spokane, who examined the defendant stated that defendant did not exhibit the characteristics of a sex offender.

The defendant was convicted and sentenced to eight years imprisonment with four years suspended.

The following issues are raised on appeal:

(1) Whether the court erred by denying defendant's motion to dismiss the information for lack of reasonably specific date when the offense alleged therein was to have occurred.

(2) Whether there was insufficient evidence produced at trial to support the guilty verdict.

(3) Whether the court erred by denying defendant's motion for mistrial predicated upon prejudicial prosecutorial misconduct.

(4) Whether the presentence report was properly used by the court.

As a basis for his appeal, defendant contends that the State did not prove with sufficient specificity the date the crime was committed. The information indicated a ten month period, January 1, 1983 to October 28, 1983, during which the offense was to have occurred. The defendant maintains the lack of specificity as to the date in the information prevents him from being able to properly prepare a defense or to assert an affirmative defense. The defendant further maintains that lack of specificity abrogates his protection from double jeopardy. Specifically, he argues that the broad time frame could conceivably subject him to being prosecuted at a later date for the same offense.

The defendant primarily relies on a Pennsylvania Supreme Court decision where a conviction of an offense committed within a fourteen month period was reversed. Commonwealth v. Devlin (Pa. 1975), 333 A.2d 888. The court noted the importance of establishing a date the offense was committed so as to enable the defendant to know what dates he must cover if his defense is an alibi. We find this Pennsylvania decision inapposite to the facts of the instant case. Here, it would have been an impossible burden for the defendant to offer an alibi for a ten month period while he had custody of the victim.

The State maintains defendant's argument misconceives the purpose of an information. The State argues the primary

- 4 -

purpose of an information is to give general notice to the defendant of the charge against him. We agree.

We find the information sufficient. The statute which guides us in this inquiry is section 46-11-401(1)(c)(iv), MCA, which states as follows: "a charge shall . . . charge the commission of an offense by . . . stating the time and place of the offense as _definitely as_ _can_ _be_ _done_." (Emphasis added.) The statute does not require the exact time, date, month or even year to be specified.

The State cites to a recent decision rendered by this Court involving sexual abuse of a child. In State v. Clark (Mont. 1984), 682 P.2d 1339, 41 St.Rep. 833, the victim was a twelve-year old, repeatedly raped by her step-father over a ten-month period. In upholding the sufficiency of the information, this Court stated, "The law does not, however, demand impossible precision." State v. Clark, 682 P.2d at 1343. In _Clark_, this Court provided a standard to judge whether the information states the time of the alleged offenses with sufficient particularity: ". . . (1) whether time is a 'material ingredient in the offense,' and (2) whether a continuing course of conduct is alleged."

In applying this standard we find the following: The defendant argues that he had a right to assert an affirmative defense and was prevented from doing so by the fact that there was a ten month span to consider. The affirmative defenses available to the defendant are enumerated in section 46-15-301,(2)(a), MCA. It appears that the defense of alibi is the only one which could apply to this charge. It would have been a futile gesture for the defendant to have offered an alibi for a period of time the defendant had custody of the victim. Moreover, in _Clark_, this Court rejected

defendant's argument that notice of an alibi defense made time a material ingredient in the offense. State v. Clark, 683 P.2d at 1345. Thereby the first test of Clark is satisfied.

In regard to the "continuing course of conduct" element, we have recognized that when a continuing course of conduct is alleged, further specificity is not required. State v. Riley (Mont. 1982), 649 P.2d 1273, 39 St.Rep. 1491. In Riley, an information alleging a continuing course of abusive conduct over a two year period culminating with the victim's death was upheld. In the present matter, the record shows and the information alleges a single act of incest during the ten-month period. Because a single act of incest was alleged and was not of a continuing nature, this alone, does not affect the sufficiency of the information.

The State notes courts from other jurisdictions are stongly in accord with Clark. In People v. King (Colo.Ct.App. 1978), 581 P.2d 739, the court allowed a charge "from July 1, 1976 to January 10, 1977," stating the specific date of the offense was not a material allegation in prosecution for sexual assault on a child. The Kansas Supreme Court ruled the allegations of child abuse and torture were as specific as possible under the circumstances. People v. Wonser (Kan. 1972), 537 P.2d 197; State v. Fahy (Kan. 1968), 440 P.2d 566; State v. Kilpatrick (Kan. Ct. App. 1978), 578 P.2d 1147. In California the court said the precise time of the crime is not required in criminal pleadings. It is sufficient if it alleges any time before filing of the information, except where time is a material ingredient of the offense. People v. Wrigley (Cal. 1968), 443 P.2d 580. In Idaho, an information stating "May and June

- 6 -

1976" was held sufficient in a charge of sexual abuse. State v. Roberts (Idaho 1980), 610 P.2d 558. We believe that Clark states the applicable rule of law.

In this case of incest, a four-year old child was the victim. The prosecutor was handicapped from the outset of the case in obtaining specific information about the offense. We should recognize that children, particularly four-year olds are not governed by the clock and calendar as adults are. They are generally at a loss to apply times or dates to significant events in their lives. "Children are less likely to distinguish dates and time with specificity." State v. Clark, 682 P.2d at 1344. The fact that the victim cannot set a date for the crime should not be fatal to the State's case, thus making the defendant virtually immune from prosecution.

Finally, defendant's contention that the broad time frame alleged in the information subjects him to double jeopardy is without merit. The State is barred by Article II, Section 25 of the Montana Constitution from retrying the defendant for the offense to this particular victim during the time in question. We hold the defendant was not prejudiced by the inability of the State to be more specific as to the date of the alleged offense.

The second issue raised by the defendant concerns the competency of the victim. Defendant filed a motion in limine to suppress the testimony based on the competency of the child to testify. A hearing on the motion was held. The District Court judge thoroughly questioned the victim. Counsel also examined the child. The District Court concluded that the child was competent to testify. The District Court made the following findings of fact:

"1. That [the victim] knows the differnce between oath and falsehood.

"2. That she has the present understanding of the obligation and necessity to tell the truth.

"3. That she appreciates that she will be punished for telling a falsehood in Court.

"4. That she has the ability to respond to simple questions about the occurrence.

"5. That she had mental capacity at the time of the occurrence to observe and register the observance.

"6. That she has the memory sufficient to retain an independent recollection of the occurrence."

The defendant argues that the victim lacked the qualifications of competency as a witness in that:

(i) she could not understand nor appreciate the oath;

(ii) her testimony was inconsistent, contradictory and not clear and convincing; and

(iii) that she had no real independent recollection of the event charged in the information.

Based on the foregoing, the defendant urges the evidence adduced at trial was insufficient to support a guilty verdict.

The State maintains that State v. Rogers (Mont. 1984), 692 P.2d 2, 41 St.Rep. 2131, is controlling. In Rogers we found a four-year old sexual assault victim competent to testify. This Court noted "whether a child is a competent witness is a determination left largely to the discretion of the trial court." Rogers, 41 St.Rep. at 2135, citing State v. Campbell (1978), 176 Mont. 525, 579 P.2d 1231. However, one distinction between Rogers and the instant case is in order. In Rogers, the four-year old's testimony was consistent with the testimony of the examining physician and other witnesses. Here, the four-year old victim was the principal witness for

the State. The mother was the only other witness who offered corroborating testimony. The defendant urges out of vindictiveness toward the defendant, K.H. induced and influenced the child's testimony in order to frame the defendant. A similar allegation was raised in a recent case, State v. Phelps (Mont. 1985), 696 P.2d 447, 42 St.Rep. 305. In Phelps the defendant alleged a five-year old was coached into testifying. We upheld the lower court's determination that a five-year old boy was competent to be a witness in a sexual abuse case. We noted although inconsistencies exist in the child's perception of where he was, it did not affect his competency.

Rule 601, Montana Rules of Evidence provides the standards governing competency of a witness:

> "Rule 601. Competency in general;
>
> "(a) General rule competency. Every person is competent to be a witness except as otherwise provided in these rules.
>
> "(b) Disqualification of witnesses. A person is disqualified to be a witness if the court finds that (1) the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or (2) the witness is incapable of understanding the duty of a witness to tell the truth."

In Phelps, supra, 42 St.Rep. at 312, we examined this rule, and stated, "Competence is determined by capacity of expression and appreciation of the duty to tell the truth."

In the present case, defense counsel inquired into the victim's ability to understand the meaning of the oath:

> "Q. [By Mr. Bridenstine] Do you know who God is?
>
> "A. [the victim] (Nods head)

"Q. Who is God?

"A. He goes in everything and he lives in your heart. You can feel him.

"Q. Do you know who the Devil is?

"A. (Shakes head)

"Q. Satan. Have you ever heard that word before?

"A. No.

"Q. How about Jesus?

"A. Yes.

"Q. Who is Jesus?

"A. He is a friend of God. God don't have a face. He is on everything."

Furthermore, the child was directly questioned as to the truthfulness of her testimony:

"MR. PREZEAU: And did we tell you what to say or did we tell you to say the truth?

"THE WITNESS: You told me to say the truth.

"MR. PREZEAU: Did your mommy tell you what to say or did she tell you to say the truth?

"THE WITNESS: She told me to say the truth.

"MR. PREZEAU: Thank you, [the victim's name]."

The foregoing colloquy disposes of the defendant's contention that the victim's testimony was induced by K.H. The victim's testimony clearly illustrates her capacity to appreciate the duty to tell the truth. The fact that there were no other witnesses to the alleged incestuous act was not in the child's control. Such a circumstance must not undermine a determination of competency.

Moreover, Rule 601, Montana Rules of Evidence, which defines the competency of a witness, has no age requirement.

State v. Rogers (Mont. 1984), 692 P.2d 2, 41 St.Rep. 2134; State v. Smith (Mont. 1984), 676 P.2d 185, 41 St.Rep. 176; State v. Campbell (1978), 176 Mont. 525, 579 P.2d 1231. The record clearly shows that the victim was capable of expressing herself. She did so verbally as well as by demonstration with anatomical dolls. Her ability to serve as a competent witness not only convinced the trial judge, as evinced by the findings of fact and conclusions, but also members of the jury. We hold this case should remain in accord with this Court's precedent that questions of competency is a determination left largely to the discretion of the trial court. State v. Phelps (Mont. 1985), 696 P.2d 447, 42 St.Rep. 305; State v. Rogers (Mont. 1984), 692 P.2d 2, 41 St.Rep. 2131; State v. Campbell (1978), 176 Mont. 525, 579 P.2d 1231.

The District Court's instruction to the jury prior to the victim's testimony that: "a determination of the competency of the witness had been made and that the credibility of her testimony rests with the province of the jury," was given to inform the jury as to the qualification of the victim as a witness. We hold the instruction properly left the weight of the evidence within the province of the jury.

The defendant next claims the State's cross-examination of defendant's character witnesses was improper and constituted grounds for a mistrial.

The defendant's character witness was a private investigator named Robert Evans. On direct examination, Evans testified that he had investigated the background of the defendant and the charges against him. In substance, he testified that he contacted over twenty people and spent more

- 11 -

than fifty-six hours in the course of the investigation; that the defendant told the truth regarding the charges; that no information would substantiate that the defendant committed the alleged offense; and that each person contacted was supportive of the defendant.

With regard to the opinions expressed by witness Evans on direct examination, the State cross-examined him as follows:

"Q. Well, sir, you put 56 hours in this case. I want to know if you knew who your client is. You said he is so honest with you. Did he tell you those things?

"A. I didn't ask him those questions, sir.

"Q. Well, did you investigate his past at all?

"A. We did investigate one alleged offense, and it came back negative.

"Q. What alleged offense was that?

"A. He said he had had some difficulty in Afton, Wyoming. It came back negative from that office.

"Q. And did you talk to the parents of that alleged victim, M. R.?

"A. Why should I talk to somebody when it came back from the official record, said, 'We have no record, no offense.'

"Q. Well, a lot of times charges don't get filed, don't you think?

"A. I am not in the business of filing charges, sir. I don't know what the decisions are of whether they do or do not. I only go by what the official record is that came to me under the name that I was given and the birthdate I was given."

Defendant contends the cross-examination by the State of alleged prior acts or crimes was contrary to Rule 404(b), Montana Rules of Evidence. The defendant further submits that the admission of the witness' statements were

prejudicial and could not be cured by striking the objectionable portion of the testimony citing State v. Cassagranda (Mont. 1981), 637 P.2d 826, 38 St.Rep. 2127; State v. Tiedemann (1961), 139 Mont. 237, 362 P.2d 531.

The State argues that the defendant's reliance on Rule 404(b) is inappropriate. This is not a case where a State introduced evidence of "other crimes" in its case-in-chief. But rather, the State maintains, the defendant placed his character at issue by allowing Robert Evans to testify as to the defendant's reputation. Therefore, the correct reference is to Rule 404(a), Montana Rules of Evidence pertaining to the character of the accused. Citing to State v. Heine (1976), 169 Mont. 25, 544 P.2d 1212, the State submits when the accused calls a witness to support his good reputation, he opens the door to all legitimate cross-examination of that witness. We agree.

The admissibility of character evidence is governed by Rule 404(a)(1), Montana Rules of Evidence:

> "Rule 404. Character evidence not admissible to prove conduct, exceptions; other crimes; character in issue.
>
> "(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same."

The method of proving the evidence of a pertinent trait of the defendant's character is provided in Rule 405, Montana Rules of Evidence, which states:

> "Rule 405. Methods of proving character.

> (a) Reputation or opinion. In all cases
> in which evidence of character or a trait
> of character of a person is admissible,
> proof may be made by testimony as to
> reputation or by testimony in the form of
> an opinion. On cross-examination,
> inquiry is allowable into relevant
> specific instances of conduct."

Defendant denied the incest allegation. As a result, questions regarding defendant's character traits of truthfulness, lack of prior crimes and the investigation of defendant's background pertain to the key parts of his defense. Moreover, defendant indicated in his opening statement that defendant's witnesses would testify to his reputation in the community for being an honest man and a good parent who would not injure his child.

Evans testified at length and in detail as to the defendant's character with particular emphasis on his truthfulness and lack of criminal background. In State v. Heine (1976), 169 Mont. 25, 544 P.2d 1212, we stated:

> "When the accused calls a witness to
> support his generally good reputation in
> the community, he opens the door to all
> legitimate cross-examination of that
> witness and must therefore accept the
> consequences which result. State v.
> Moorman, 133 Mont. 148, 153, 321 P.2d
> 236; State v. Cor, 144 Mont. 323, 396
> P.2d 86; State v. Turley, 164 Mont. 231,
> 521 P.2d 690."

The Commissioner's Comments to Rule 404(a)(1), Montana Rules of Evidence state:

> "These cases also stand for the
> proposition that the prosecution may
> cross-examine the witnesses for the
> accused concerning rumors or reports
> concerning the reputation of the accused
> which would rebut their good character
> testimony and may cross-examine the
> witnesses to determine the sufficiency of
> grounds upon which they base their
> testimony."

"It is a well settled rule that the proper scope of cross-examination is determined by the scope of direct testimony." State v. Clark (Mont. 1984), 682 P.2d 1339, 41 St.Rep. 833.

Evans on direct examination tesified that he had thoroughly investigated the defendant and his background and all information that would substantiate the charges in this action. The prosecution then questioned Evans regarding any other offenses of the defendant. The witness himself, first referred to the molestation incident in Wyoming and not the prosecution. It was only after Evans identified the incident, did the prosecutor take hold of the opportunity to reveal to the jury that Evans did not investigate the defendant's background as thoroughly as he stated he had.

We hold the State's cross-examination falls within the scope of Rule 404(a) of the Montana Rules of Evidence.

The other incident challenged by the defendant on appeal involves the examination of defense witness Susie Sorenson. Sorenson testified on direct to the relationship between the victim and the defendant and as to the reputation of the defendant in the community. During cross-examination, the prosecution examined Sorenson regarding an investigation by the Welfare Department of an alleged sexual molestation of her daughter, inferring the defendant was involved.

The examination by the State amounted to overzealous prosecution. Such conduct shall not be condoned. However, we are satisfied that the defendant suffered no prejudice under these circumstances. The District Court allowed Dr. Wert, a clinical psychologist, to testify that the defendant did not exhibit the characteristics of a sex offender. The

court allowed this testimony only because reference had been made to the prior incident of sexual molestation.

Furthermore, the record reveals the defense counsel made no objection to the examination of Sorenson by the State. We have repeatedly held that we will not review a matter raised for the first time on appeal. Peters v. Newkirk (Mont. 1981), 633 P.2d 1210, 38 St.Rep. 1526; Northern Plains v. Board of Natural Resources (1979), 181 Mont. 500, 594 P.2d 297.

In view of the entire record, we find defendant's allegations not only untimely, but also without prejudice.

The final issue raised by defendant, alleges prejudice due to inaccuracies in the presentence investigation report.

The defendant objects to information obtained from:

(a) M.R. in Afton, Wyoming;

(b) K.H., the mother of the victim; and

(c) K.H.'s parents, then living in Phoenix, Arizona. The defendant contends the statements from these individuals constituted hearsay and thereby tainted the report. Since none of these persons were present in court at sentencing nor amenable to defendant's subpoena, defendant submits, his Sixth Amendment right was violated.

At the sentencing hearing defense counsel objected to the presentence report's reference to the molestation incident in Wyoming. The District Court ruled:

> ". . . the Court will delete from the presentence report and from the Court's consideration in this case the references on page 4 to a prior report of a possible sexual molestation, and the Court will delete that particular full paragraph under paragraph 2 on page 4, and any other references in the presentence report to that particular situation."

An examination of the presentence report illustrates that the incident was deleted.

Defendant's contention that hearsay taints the presentence report is without merit. Section 46-18-112, MCA authorizes a complete investigation into the background of the defendant. The statute does not limit hearsay in a presentence investigation. It would be contrary to the purpose of such an investigation and report if it did.

The probation officer, Daniel Hoy, recommended that the defendant be committed to the Montana State Prison for a term of ten years with mandatory mental health and sex offender therapy upon parole. Tom Best recommended that the defendant receive mental health counseling and no imprisonment. The defendant submits the District Court's reliance upon the recommendation of the probation officer was in error.

The trial court sentenced the defendant to eight years in prison with four suspended. The District Court's judgment and sentence specified the reasons for the sentence imposed:

(1) that the crime committed against the victim was serious and heinous;

(2) that he would not be receptive to direction under supervision of a probation officer;

(3) that he does not have the frame of mind to accept mental counseling or sexual therapy;

(4) that his past criminal record and social history reveals conflict with the law and alienation and estrangement from his family; and

(5) that he needs deterrent to refrain from committing such offenses.

We find no merit to defendant's contention. Section 46-18-302, MCA, authorizes the sentencing judge to consider

the widest possible scope of inquiry when determining the sentence to be imposed.

> "In the sentencing hearing, evidence may be presented as to any matter the court considers relevant to the sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, and mental and physical condition, and any other facts in aggravation or mitigation of the penalty. Any evidence the court considers to have probative force may be received regardless of its admissibility under the rules governing admission of evidence at criminal trials. . . . " Section 46-18-302, MCA (Emphasis supplied.)

We have spoken upon the sentencing judge's discretion to use the presentence report in a recent Montana Supreme Court decision. In State v. Smith (Mont. 1985), _____ P.2d _____, 42 St.Rep. 463, this Court stated:

> "At most, the report was merely an additional factor the court was allowed to consider when imposing the sentence. . . We hold the presentence report containing a sentencing recommendation did not violate the defendant's rights . . ."

In adopting this rule we examined a United States Supreme Court decision, Williams v. New York (1949), 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, in which the Court stated:

> ". . . highly relevant -- if not essential -- to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied the opportunity to obtain pertinent information by a requirement of rigid adherence of restrictive rules of evidence properly applicable to the trial. . . [probation] reports have been given a high value by contentious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information

- 18 -

. . ." (Emphasis supplied.) Williams v. New York (1949), 337 U.S. at 247-249.

We hold the presentence report was properly used by the District Court when imposing the sentence.

Accordingly, the judgment of the District Court is affirmed.

_John Conway Harrison_
Justice

We concur:

_J. B. Turnage_
Chief Justice

_[signature]_

_John C. Sheehy_

_L. C. Gulbrandson_.

_William E. Hunt_
Justices

- 19 -

Mr. Justice Frank B. Morrison, Jr. specially concurring:

I concur specially for the reason that the majority opinion does not adequately discuss the credibility of the four year old child whose testimony comprises the entire case for the prosecution. I am only agreeing to the result because of my strong feeling for deference to a trial judge in determining competency and my strong opposition to appellate judges interfering with jury verdicts. However, this child's testimony borders on being incompetent as a matter of law.

So that the record will be clear, I set forth the following abstract of testimony from the transcript which shows the weak nature of the evidence upon which this prosecution is based. The following questions and answers are taken from the child's cross-examination:

"Q. Now, you said that your father made you, and you said this, suck on his weenie.

"A. Yes.

"Q. That isn't true, is it?

"A. No."

On redirect examination this testimony was given:

"Q. Now, when Mr. Bridenstine -- you remember the man who just talked to you?

"A. Yes.

"Q. The man with the funny name. Remember?

"A. Yes.

"Q. Now, when you said your daddy didn't make you do that, was that true or was that a lie?

"A. That was a lie.

"Q. Did your daddy make you do that?

"A. Yes."

The following answer was followed by this recross-examination:

20

"Q. [The victim's name], who told you to say that?

"A. My mom."

The defendant is a man 30 years of age who established a common law marriage relationship with K. H., the woman described by the child as "mom". The child was born December 6, 1979. The couple lived together with the child until September, 1982, when they consented to a dissolution of marriage in Flathead County, Montana. Following the dissolution, K. H. left the state of Montana and the father and the child lived together until May of 1983 when K. H. returned to the area. She had not seen the child for approximately nine months. The dissolution decree granted parental custody of the child to the defendant subject to visitation rights for the mother.

When the mother returned to the Kalispell area she sought modification of the custody decree allowing her to have custody for nine months of the year. The defendant refused to agree. The defendant, on at least one occasion, denied visitation rights to the mother because of her intoxicated condition. The mother then reported to Tom Best of Family Court Services that the child had told her about this incident.

The defendant produced psychological testimony that showed defendant was not capable of sexual abuse. The State did not rebut the testimony.

There is strong motive for the mother to cause the child's fabrication of this incident so the mother might obtain custody. The child's testimony borders on being incredible due to admissions made on cross-examination and recross-examination.

The law does not require corroboration in these cases. Perhaps it should. This case may well represent a terrible miscarriage of justice. I concur specially so that the facts will be placed upon the record.

Justice