**Paul T. DUNCANSON,**
**Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–377A80.**

Court of Appeals of Indiana,
Third District.

July 17, 1979.

Rehearing Denied Sept. 11, 1979.

Saul I. Ruman, Hammond, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

Paul T. Duncanson was found guilty by a jury of two counts of conspiracy to commit a felony, two counts of theft of property of a value over $100, and second degree burglary.

His convictions resulted from police investigation of information given them by Philip Carson Noojin. Noojin told the police that he had stolen three boats and sold them to Duncanson. He claimed he had told Duncanson the first boat had been stolen and that Duncanson had indicated he would be interested in a second boat, which Noojin subsequently provided. After he purchased the second boat from Noojin, Duncanson located a third boat which he showed Noojin. Noojin stole this boat and sold it to Duncanson.

After Noojin disclosed these alleged events to the police, he was asked if he would be willing to engage Duncanson in a conversation while wearing a concealed microphone and tape recorder. Noojin agreed and as a result of the incriminating statements on the tape, charges were brought against Duncanson.

Prior to trial, Duncanson sought to depose Noojin. However, Noojin refused to answer approximately 20 questions, largely on the ground that an answer would incriminate him. He was subsequently granted immunity from prosecution for the thefts of the boats and for an unrelated burglary. Nonetheless, in a second deposition, Noojin again refused to answer a substantial number of questions. Similarly, at trial Noojin refused to answer some questions concerning criminal activity other than the crimes for which he had been granted immunity.[1]

Duncanson's first ground for appeal is that the trial court should have stricken Noojin's direct testimony because of his refusal to answer all of the defense's questions on cross-examination. He argues that Noojin's refusal to answer questions propounded on cross-examination denied him

---

1. Noojin was assisted by counsel and instructed as to which questions he should answer.

his Sixth Amendment right of confrontation. Duncanson asserts that he was prevented from showing that Noojin was involved in numerous criminal transactions and that as a result, his testimony as the state's chief witness was biased, having been given in an attempt to curry favor with the state.

■ Revelation of bias on the part of a witness is a legitimate and often essential goal of cross-examination,

". . . for if believed it colors every bit of testimony given by the witness whose motives are bared." *United States v. Blackwood* (2nd Cir. 1972), 456 F.2d 526, 530.

In *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, the Supreme Court held that a refusal to permit inquiry into matters which might show bias may amount to a denial of a defendant's right of confrontation. Our own Supreme Court has held that:

"Evidence of bias is not limited to the scope of direct examination, nor is such evidence collateral." *Clark v. State* (1976), 264 Ind. 524, 348 N.E.2d 27, 32.

■■ Although revelation of bias may be central to a defendant's right of confrontation, that right may not be used to compel testimony which is privileged under the Fifth Amendment. Cross-examination is subject to limitations, not the least of which is the privilege against self-incrimination. Federal courts considering the question assure the preservation of the rights of both defendant and witness by striking the direct testimony of the witness in those circumstances where a proper invocation of the privilege has resulted in depriving the defendant of the ". . . ability to test the truth of the witness' direct testimony" which causes a substantial degree of prejudice. *Fountain v. United States* (5th Cir. 1967), 384 F.2d 624, 628. However,

"[a] defendant's rights do not bar the admission of the witness's testimony against him where the questions concern subject matter which is either collateral or cumulative and where the cross-examination is directed at the witness's general credibility rather than toward matters relating to the specific events of the crime charged." *United States v. LaRiche* (6th Cir. 1977), 549 F.2d 1088, 1097, *cert. den.*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977).

While the court in *Borosh v. State* (1975), Ind.App., 336 N.E.2d 409, 412–13 was not concerned with the invocation of the privilege against self-incrimination, we find the following language to be in harmony with that used in *LaRiche*:

"A number of decisions have held such right to cross-examination to be infringed upon where a defendant's counsel is wholly precluded from bringing before the jury on cross-examination relevant and substantial evidence bearing upon the credibility of a crucial witness against the accused. *See Davis v. Alaska, supra*; *U. S. v. Duhart* (6th Cir., 1975), 511 F.2d 7; *Snyder v. Coiner* (4th Cir., 1975), 510 F.2d 224; *U. S. v. Harris* (9th Cir., 1974), 501 F.2d 1. Thus, it is clear that only a total denial of access to such an area of cross-examination presents a constitutional issue. Any lesser curtailment of cross-examination by the trial court is viewed as a regulation of the scope of such examination, and such curtailment is reviewable only for an abuse of discretion. *Brooks v. State* (1973), 259 Ind. 678, 291 N.E.2d 559."

■ We cannot agree that the denial of cross-examination into the areas here attained constitutional magnitude and required the striking of Noojin's direct testimony. Although Noojin refused to answer questions about certain other crimes, he did testify that he was then in jail charged with armed robbery and that after he had testified against Duncanson before the grand jury he had been charged with assaulting a police officer, disorderly conduct and homicide. He testified about the grant of immunity, his motive for confessing to the thefts, and he described police efforts to find employment for him after he had confessed.

While testimony concerning other crimes might have heightened the inference of bias, it would have been merely cumulative to the substantial evidence which had al-

ready been admitted; its exclusion was not an abuse of discretion and did not require the direct testimony to be stricken.

Duncanson next argues that both Noojin's testimony concerning his consent to carry a concealed tape recorder and the recording should have been excluded because the limitations placed on cross-examination prevented Duncanson from showing that Noojin's consent was not truly voluntary. He argues that in the absence of the consent of either of the parties to a conversation that it be recorded, a Fourth Amendment violation occurs. *See Matter of Wood* (1976), 265 Ind. 616, 358 N.E.2d 128, 132. Duncanson contends that even if evidence of bias is collateral to the issue of guilt and, therefore, may be excluded as discussed above, it is not collateral insofar as Noojin's consent is concerned. In addition, he argues that the scope of Noojin's involvement in criminal activities precluded the possibility of a truly voluntary consent on his part. Duncanson maintains that Noojin had no choice but to cooperate with the police.

■ Even if we were to agree that the limitation on cross-examination prevented Duncanson from showing that Noojin's consent to carry the recorder was founded in a belief that his own best interest would be served by cooperation, that belief would not affect the voluntariness of his consent. The hope of receiving a lesser sentence does not vitiate the voluntariness of a guilty plea (*North Carolina v. Alford* [1970], 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, nor does a similar hope affect consent to record a conversation. *United States v. Silva* (1st Cir. 1971), 449 F.2d 145. The language of *United States v. Bastone* (7th Cir. 1975), 526 F.2d 971, 977, *cert. den.* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976), disposes of Duncanson's argument:

> "We fully realize that [the witness's] . . . cooperation stemmed from the fact that he believed he would receive a better deal from the government. Yet that fact alone does not vitiate his consent or indicate that his actions were the product of government control. A finding of involuntariness does not result simply because a person has been indicted or

is the subject of a government investigation."

Nor does a finding of involuntariness necessarily result from confession of crimes. Noojin signed a consent form before he recorded the conversation and nothing in the record shows that his consent was the product of duress or coercion calculated to overbear his will. *See U. S. v. Silva, supra.* His testimony and the recording were, therefore, not vulnerable to challenge on this ground.

■ Duncanson presents other grounds for exclusion of the recording and of a transcript made of the recording. He urges that the recording does not meet the standards set forth in *LaMar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795, that no foundation was established for admission of the transcript, that the transcript was hearsay, was not the best evidence of the conversation, and that the transcript in combination with the recording placed undue emphasis upon a single piece of evidence.

The trial court held a separate hearing on Duncanson's motion to suppress the tape. Thomas Yackish, an associate professor of electrical engineering at Purdue University, testified that he had been asked by the state to analyze the recording after defense counsel, who had originally retained him, decided to forego an analysis. Yackish testified that he was satisfied, after completing several tests on the tape, that the tape had not been altered or tampered with. Noojin identified the voices on the tape as his own and Duncanson's. He testified that the transcript made from the tape was a "verbatum [sic] and accurate reflection" of their conversation. The court listened to the tape and ruled that it could be played for the jury once certain parts, agreed to by counsel, were deleted.

In *LaMar v. State, supra,* at 800, the Supreme Court required that prior to the admission of a recording, a foundation be laid which discloses:

> "(1) That it is authentic and correct;
>
> (2) That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgements and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence; and

(5) That it is of such clarity as to be intelligible and enlightening to the jury."

The third requirement has no relevance here since it relates to custodial interrogations of an accused. The second requirement has been established as to Noojin by our discussion above. The first and fourth requirements were met by the evidence presented by Noojin and Yackish and by the court's deletion of inadmissible matter.

The remaining requirement of *LaMar* is that the tape be of sufficient clarity to be intelligible and enlightening to the jury. Duncanson argues that because the prosecution saw fit to introduce a transcript to be read while the tape was being played and because the transcript bore the notation "inaudible" numerous times, the tape was not sufficiently clear to be intelligible.

■■■ The fact that a transcript was introduced before the court in its hearing and before the jury does not mean in every case that the recording it purports to be a representation of is inaudible or inaccurate. Transcripts may be used simply to allow the jury to determine the identity of the speakers and to enable them to follow the conversation more easily. *Fountain v. United States, supra.*

■■■ Nor can we conclude that the fact some portions of the tape were inaudible necessarily means that there existed an absence of clarity such that the conversations were unintelligible. While we agree with language in *Lamar* to the effect that inaudible portions invite the jury to speculate as to what was said by the conversants, we do not believe that case requires exclusion of every tape which has inaudible portions. It may be that the period of inaudibility is brief enough so that little or no meaning is lost; or it may be that what is inaudible to the listener was also inaudible to the speakers. Since Duncanson has not provided us with the opportunity to hear the tape for ourselves, we cannot speculate as to the effect of the inaudible portions upon the overall clarity of the recording. In this instance we may not substitute our judgment for that of the trial court insofar as a determination of clarity is concerned. Moreover, we note that Duncanson makes no claim that the transcript differs from the tape in any specifics or that the contents of the one contradict in whole or in part the contents of the other. Any lack of clarity does not appear to have affected accuracy.

■■■ Duncanson's remaining contentions concern the admissibility of the transcript. He first maintains that no foundation was laid for its admission. We disagree. The record shows the recording was transcribed by the police chief's secretary with the assistance of two police officers. While it is not signed, it bears the notation "Hammond Police Department, Case No. 75–50424, Transcript of Recorded Tape." Both officers were available at trial for cross-examination and both assisted in the transcribing. Duncanson concedes that had the secretary been present at trial a foundation would arguably have been laid. However, we feel that since the two officers were present and subject to cross-examination and since they participated in the transcript preparation, a foundation was laid. As was stated in *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, 484, an out-of-court statement rests ". . . for its value upon the credibility of the out-of-court asserter." So long as the officers were present for cross-examination, we see no error. Moreover, Noojin testified that it was an accurate reflection of his conversation with Duncanson.

■■■ The next argument is that the transcript should have been excluded because the tape was the best evidence of its own contents. We agree that the tape was the best evidence, but in view of the assistance the transcript could provide, we find no error.

Duncanson next argues that the cumulative effect of the tape and transcript upon the jury unduly emphasized the conversation in their minds. A similar contention was considered and properly rejected in *Fountain v. United States, supra,* at 632:

"The task of the District Court was to weigh the danger of such over-emphasis against the inconvenience and confusion of stopping the tape between each speaker and permitting Lt. Gracy to identify the next speaker. We cannot say that he arrived at the wrong balance."

In this connection, Duncanson urges that because the tape was played and the jury again given the transcript during final argument, this evidence was further unduly emphasized. However, he failed to raise this issue at trial. It is therefore waived.

We note that when the tape was played for the jury the court instructed the jurors that this evidence should not be given undue weight simply because it was presented by electronic equipment:

"All that I am telling you is, in effect, that you have a right to hear such evidence in accordance with the rules of evidence. Again, in the conduct of this trial, you may reject such evidence, you may give it very little weight, or you may give it a great deal of weight. This is your responsibility, because you are the judges of the facts.

"I further instruct you that there are dead spaces or blank portions of the tape recording. These are portions of the tape which were ordered deleted by this Court for evidentiary reasons."

Transcript pages 922 and 933

Although this instruction was undoubtedly helpful, and while we find no reversible error, we believe that adherence to the following guidelines set forth in *United States v. McMillan* (8th Cir. 1974), 508 F.2d 101, 105 would constitute better practice:

"The best evidence of the conversation is the tape itself; the transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. If accuracy remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents. *Cf. Fountain*

*v. United States*, 384 F.2d 624, 632 (5th Cir. 1967), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). Because the need for transcripts is generally caused by two circumstances, inaudibility of portions of the tape under the circumstances in which it will be replayed or the need to identify the speakers, *see United States v. Bryant*, 480 F.2d 785, 790–791 (2d Cir. 1973); *Fountain v. United States, supra*, 384 F.2d at 632; *United States v. Hall*, 342 F.2d 849, 853 (4th Cir.), *cert. denied*, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), it may be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes. In the ordinary case this will not be prejudicially cumulative. *United States v. Fountain, supra*, 384 F.2d at 632. Transcripts should not ordinarily be read to the jury or given independent weight. The trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference. Transcripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence. *See generally* 17 Am.Jur. P.O.F. *Tape Recordings as Evidence* §§ 54–56 (1966)."

Lastly, Duncanson maintains that the sentence he received was excessive, beyond the trial court's discretion, and a violation of the Eighth Amendment. In brief, his argument is that he should have been placed on probation because he had been, at least until the time of these convictions, a prominent, respected member of the community who had volunteered his efforts for numerous educational and charitable organizations. He argues that prominence in the community and evidence of adherence to the law should not result in a sentence harsher than would be received by one who does not possess such attributes. He also maintains that one who pleads not guilty should not be punished more severely than an accused who pleads guilty and thereby

obviates the need for a trial. With these sentiments we are in general agreement. However, Duncanson has presented no evidence of discrimination taking the form of harsher sentencing for those with a hitherto unblemished past or for those who plead not guilty. Duncanson has not established any abuse of that discretion in the sentence imposed. The decision to admit a convicted defendant is within the discretion of the trial court. It is a favor granted by the court, not a right. *Farmer v. State* (1971), 257 Ind. 511, 275 N.E.2d 783.

Affirmed.

STATON, J., and ROBERTSON, J. (sitting by designation), concurs.