**Paul F. McMANUS, Appellant**
**(Defendant below)**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 981S255.

Supreme Court of Indiana.

April 13, 1982.

Stephen C. Haas, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Paul F. McManus, was convicted by a jury of conspiracy to commit a felony, to-wit: burglary of a dwelling, a class B felony, Ind.Code §§ 35–41–5–2 and 35–43–2–1 (Burns 1979 Repl.). He was sentenced to a term of sixteen years' imprisonment. This direct appeal raises the following four issues:

1. Whether the trial court erred in admitting into evidence two tape recorded conversations between defendant and a witness, Thomas Hape;

2. Whether the trial court erred in allowing the state to call Lola Gagnon as a rebuttal witness;

3. Whether the evidence was sufficient to support the verdict of the jury; and

4. Whether the trial court erred in sentencing defendant.

A summary of the facts from the record most favorable to the state shows that on March 6, 1980, George Hape called the Vanderburgh County Sheriff's Office and told an officer that his son, Thomas, had been approached by defendant and asked to break into a house located at 8205 Heather Place in Evansville. Thomas and his father went to the sheriff's office two days later and Thomas gave a statement about the incident. He said that defendant asked him if he wanted to make some money by breaking into a house. Defendant handed him a card and said that the address on the card was the house he wanted him to break into, that the residents would not be at home, and that he would help "check out" the house prior to entry. Defendant also told Hape how to break into the house and

said he would sell the items taken. The card contained the following pencil notation on the back: March 10–14 Convention, 8205 Heather Place. It was later identified as a Bucyrus Erie Corporation employee time-card which had been obtained from defendant's girlfriend.

Hape volunteered to assist the sheriff's department and agreed to be wired for sound. Defendant met with Hape on March 11, and told Hape he knew the occupants of the house were out of town. He instructed Hape as to the types of items he should take and said they would split the proceeds from the sale of the items taken. This conversation was tape recorded and both the tape and a transcript of the tape were admitted into evidence. Defendant and Hape drove to the house and drove around in the vicinity of the house. Defendant gave Hape a roll of gray duct tape and a flashlight and again instructed him on how to break into the house. He agreed to meet Hape on a later day after Hape had taken the items from the house.

The police gave Hape a pillowcase containing an assortment of items which he was to represent as those taken from the house. On March 14, 1980, defendant pulled into Hape's driveway and asked if he had "the stuff." Hape gave defendant the pillowcase. Defendant said he would pay him after he sold the items, but gave him a ring as collateral at that time. This conversation was also tape recorded and both the tape and the transcript were admitted into evidence. Following this exchange, defendant drove away from the scene and was subsequently stopped by police officers who had been ordered to intercept him. Police found the pillowcase and its contents on the floor of the car and found that defendant was carrying a small caliber automatic pistol. The car defendant was driving was registered to his girlfriend who worked at Bucyrus Erie Corporation.

At the trial, defendant testified that Hape was the one who first approached him and asked him to sell some stolen goods for him. He testified that he was not able to call certain witnesses on his behalf because the police told them not to talk to him or testify for him. Defendant did present some witnesses who testified that they had seen Hape using drugs and one witness who testified that he heard Hape tell defendant about breaking into other houses.

## I.

Defendant first contends that the trial court erred in admitting into evidence the two tape recordings of the conversations between himself and Hape. He argues that portions of the tapes were not intelligible and the stenographer who made the transcripts did not testify as to their accuracy; therefore, the state had failed to establish a proper foundation.

■ It is well settled that the admission of sound recordings must be preceded by a foundation establishing five requirements. *Jones v. State*, (1981) Ind., 425 N.E.2d 82; *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795; *Duncanson v. State*, (1979) Ind. App., 391 N.E.2d 1157. The three requirements which are questioned by defendant in this case are:

1. Whether the tapes are authentic and correct;

2. Whether they are of such clarity as to be intelligible and enlightening to the jury; and

3. Whether they contain matter otherwise not admissible into evidence.

■ The record shows that the police officer who listened to the conversations while they were being recorded identified the two tapes and stated that they were a fair and accurate representation of the two conversations. Defendant identified his own voice on the tapes and both he and Hape testified about the contents of the tapes. The fact that some portions of the tapes were inaudible does not necessarily mean that there existed an absence of clarity such that the conversations were unintelligible. Defendant has not shown that the inaudible portions of the tapes in this case contained any crucial remarks which would contradict or change the nature of the conversations. The trial court and the jury

were able to look at the transcripts while the tape recordings were being played and thus could see the accuracy of the transcripts for themselves. We find there was a sufficient foundation establishing the authenticity and clarity of the tape recordings and transcripts in this case.

Defendant further argues that the trial court erred in not deleting certain material from the tapes in which he referred to prior criminal conduct. These references appear to involve the sale of illegal drugs which defendant furnished to Hape. This part of the conversation was relevant to establish the nature of the prior relationship between defendant and Hape as well as to show intent, motive, and purpose. It is the general rule that evidence of criminal activity other than that charged is inadmissible on the question of guilt. However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan. *Henderson v. State*, (1980) Ind., 403 N.E.2d 1088; *Choctaw v. State*, (1979) Ind., 387 N.E.2d 1305. Evidence of unrelated criminal activity which is relevant to a fact in issue is not inadmissible merely because it tends to show guilt of another crime. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843. The evidence here was admissible as tending to show the guilty intent and motive of defendant as well as to explain the prior relationship between defendant and Hape. We find no error in the admission of the tape recordings and transcripts.

## II.

Defendant next contends that the trial court erred by ordering a witness into court and allowing her to testify as a rebuttal witness for the state. During cross-examination, the record shows that defendant testified at one point that Lola Gagnon had been told by the police not to testify on his behalf. She was subsequently called by the state as a rebuttal witness and testified that she had not been threatened by the police or told not to testify. She stated that she felt threatened by defendant because he telephoned her several times prior to the trial and wanted her daughter to testify on his behalf.

Defendant has failed to support his contention that this witness was an improper rebuttal witness with cogent argument and supporting authority. We have often held that arguments in appellate briefs must be discernible and cogent and must demonstrate how the alleged error harmed defendant. Therefore, this issue is waived. Ind.R.Ap.P. 8.3(A)(7); *Abrams v. State*, (1980) Ind., 403 N.E.2d 345; *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105.

Defendant does contend that the trial court was improperly assisting the state and advocating a certain position when he questioned defendant about the statements Lola Gagnon allegedly made and then had her called as a rebuttal witness. We see no merit to this argument since the record clearly shows that the judge was trying to understand conflicting statements made by defendant and was not challenging any testimony or advocating a particular position. It is well recognized that the trial court may direct questions to a witness to aid in the fact-finding process as long as it is done in an impartial manner. *Kennedy v. State*, (1972) 258 Ind. 211, 280 N.E.2d 611; *Swift v. State*, (1970) 255 Ind. 337, 264 N.E.2d 317. We find no prejudice to defendant here.

## III.

Defendant next contends that there was insufficient evidence to support the verdict of the jury. He argues that the state failed to show that he committed an overt act in furtherance of the conspiracy and failed to show that he was predisposed to commit the crime. It is true that there was conflicting evidence as to whether it was defendant or Hape who initiated the idea of the burglary. However, the state presented evidence which supported the theory that defendant had conceived the initial idea for the burglary and took several steps towards the furtherance of the conspiracy. The evidence showed that defendant provided Hape with the address of the house in question, took him to the

house, advised him on how to break in, gave him some tools to use, and returned at a later time to take the allegedly stolen items.

■ On review, this Court does not weigh the evidence or judge credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Harris v. State*, (1981) Ind., 425 N.E.2d 112; *Wofford v. State*, (1979) Ind., 394 N.E.2d 100; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. Here, it is clear that there was sufficient evidence to support the verdict and any conflict in the evidence was to be resolved by the jury.

### IV.

■ Defendant finally contends that the trial court erred by imposing an additional six years to the basic sentence. He argues that the court overlooked the mitigating circumstances and did not consider proper aggravating circumstances. Defendant was convicted of conspiracy, a class B felony, which carries a presumptive sentence of ten years that may be increased by as much as ten years or decreased by as much as four years. Ind.Code § 35–50–2–5 (Burns 1979 Repl.). The trial court cited the following aggravating circumstances as the basis for the increased sentence: defendant's use of a juvenile as an accomplice; the carrying of a handgun at the time of the offense; and the use of coercive tactics in dealing with a potential witness. Although these circumstances are not specifically listed as aggravating circumstances in our statute, the statute does not limit the matters that the court may consider in determining a sentence to factors which are specifically listed. Ind.Code § 35–4.1–4–7(d) (35–50–1A–7) (Burns 1979 Repl.). *Coleman v. State*, (1980) Ind.App., 409 N.E.2d 647.

■ The trial court held a sentencing hearing and heard lengthy arguments from both the state and defendant about the possible mitigating and aggravating circumstances present in this case. The court stated the reasons for imposing the defendant's sentence and specifically stated that he had considered as a mitigating circumstance the fact that defendant had no prior criminal record. It is clear that it is within the trial court's authority to determine the weight to be given in each case to aggravating and mitigating circumstances and accordingly to increase or decrease the sentence as provided by the statute. *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289; *Dean v. State*, (1980) Ind., 398 N.E.2d 1270. We find no error in the sentence imposed.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.