Craig A. HARTLERODE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 183S27.

Supreme Court of Indiana.

Nov. 19, 1984.

Rick L. Jancha, South Bend, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979) and was sentenced to fifteen (15) years imprisonment. His direct appeal raises five (5) issues for our review, which we have consolidated into three (3) issues as follows:

(1) Whether the trial court erred in allowing three different witnesses to testify that, in their opinions, the tracks leading from the burglary site were made by the Defendant's boots;

(2) Whether the evidence is sufficient to sustain the conviction;

(3) Whether Defendant was denied a fair trial when, during the course of the trial, he was seen wearing handcuffs by members of the jury.

The record disclosed that on March 14, 1982, David Osborne and his family returned to their home in Granger, Indiana, at approximately 1:55 p.m. Osborne saw an unfamiliar Pontiac automobile parked in his driveway and noticed that the front door of his home was open. He took the keys from the automobile and went into the house. He observed that the door casing was splintered and that the house had been ransacked. He yelled, heard two voices, and then heard two sets of footsteps fleeing the premises. Osborne went out his front door and subsequently saw a man later identified as Mr. Lee pointing a shotgun at him. Lee told Osborne to "back off." When Osborne moved behind his house, he saw another man running away from the home in a southeasterly direction. He described this man as having long hair and wearing blue jeans and a denim jacket.

Osborne then got into his automobile and again saw the man with the long hair and denim clothing running across a field. Osborne enlisted the aid of his neighbor Ron Erichsen, who was carrying a shotgun, and the two returned to the Osborne residence. There they saw Lee trying to start the Pontiac automobile. Erichsen pointed his shotgun at Lee and told him to get out of the car and to lie down. Osborne then retrieved his shotgun, which had previously been in his bedroom closet, from the back seat of the automobile.

Osborne was joined by Craig Erichsen, and the two continued to pursue the man wearing the denim clothing. Subsequently, they saw him enter a wooded area. Osborne followed and fired a warning shot at him. Ultimately, Osborne saw the man, whom he identified as the Defendant, crouched behind a tree and told him to come out. When he accused the Defendant of having broken into his home, the Defendant denied it, but stated that he knew what was there. Osborne and the Defendant returned to Osborne's home where they were joined by several police officers.

## ISSUE

The Defendant argues that the trial court erred when it allowed David Osborne, Ron Erichsen and Jack Mell to give their opinions that the footprints leading from the rear of Osborne's home were made by the Defendant's boots. In *Johnson v. State*, (1978) 177 Ind.App. 501, 504–505, 380 N.E.2d 566, 569, the Court of Appeals set forth this standard for the admission of footprint comparisons:

"Indiana has permitted the introduction of the existence of footprints apart from comparison. *Foreman v. State* (1938), 214 Ind. 79, 14 N.E.2d 546. Evidence of the character of footprints found where the crime is discovered and of the similarity of those footprints to the shoes worn by the defendant is admissible to identify him as the guilty person. Ordinarily, this matter of identity is, of necessity, a matter of opinion. Upon a question of identity of an accused in a criminal case as the person committing the crime, opinion testimony based upon a comparison is admissible. For the reason that footprints are large and the points of similarity are obvious (contrasted with fingerprints or palm prints), expert testimony is not required and the comparison may properly be made a subject of non-expert testimony. A witness is generally allowed to give his opinion as to their similarity, *provided he bases his conclusion on measurements or peculiarities of the footprints.* In some cases this provision has been relaxed and a witness may testify to his belief of similarity, but we think the better view is to require measurements or some definitive statement about peculiarities or identifying characteristics. This allows the

trier of fact to determine the weight and credibility to be given the comparison. *See, Biggs v. State* (1929), 201 Ind. 200, 167 N.E. 129. *See also,* 31 Am.Jur.2d § 124, 35 A.L.R.2d 852, at 876, and cases cited therein."

The question, then, is whether the witnesses based their opinions on measurements or peculiarities of the footprints. Osborne testified that police officers asked him to look at the bottom of the Defendant's shoes "to see if they matched the prints." He then walked to the east side of his home where he observed two sets of footprints in the snow, one set going north and one going southeast. He stated that those going north had been made by Lee and that he had observed the Defendant running away from his home in a southeasterly direction. He described the footprints in question as having been made by "a work shoe type sole or boot." He further stated that, although he did not measure Defendant's shoes or the tracks in the snow, he did notice that the pattern on the bottom of Defendant's shoes was a "notched design" and that the footprints in the snow were the "same size and design as the defendant's boots."

Ron Erichsen described the footprints which were leading toward the southeast as "treaded footprints, like a boot or work shoe, very similar to the tread on a car" and more specifically as a "square nobby-type tread that ... has many square protrusions approximately three eight's to a half inch long." He then drew a picture of the pattern of the footprint at issue and stated that the Defendant was wearing boots with that design.

Police Officer Jack Mell testified that he examined both the footprints at issue and the boots worn by the Defendant. He stated that the length of the boot and the tread pattern were the same.

■ We find that each witness presented a sufficient statement regarding the unique characteristics of the footprints to justify the admission of his opinion into evidence. *See McNary v. State,* (1984) Ind., 460 N.E.2d 145, 147. Moreover, as the State points out in its brief, each of the three witnesses was vigorously cross-examined regarding the "reliability of his observations and opinion." Hence, the jury could attach whatever weight and credibility to the opinions it deemed appropriate.

## ISSUE II

Defendant argues that the evidence is insufficient to show that he either broke into or entered the Osborne home with the intent to commit theft or that he aided, induced or caused another individual to do so. He argues that the evidence, "at best, would indicate that he was near the site of the home at or around the time of the alleged offense and that he fled from the area."

Our standard of review upon a claim of insufficient evidence is as follows:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State,* (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

When Osborne arrived at his home, he saw that the front door had been broken open and that the family room had been ransacked. He then heard two distinct voices and the sound of two individuals exiting his home. After a brief confrontation with one of the two persons, he saw the individual later identified as the Defendant running away from his home in a southeasterly direction. This individual had long hair and was wearing blue jeans and a blue denim jacket. A few minutes later he saw the same person running across a field. Subsequently, after being joined by Craig Erichsen, he again saw the same individual enter a woods. Osborne

followed and clearly saw the person's face. He identified that person as the Defendant. After apprehending the Defendant, Osborne accused him of having burglarized his home. The Defendant said that he had not done so, but stated that he knew what was there. Later, Osborne compared the only footprints which followed the southeasterly path in which the fleeing individual had run with the Defendant's shoes and determined that his boots had made the footprints in the snow. Two other witnesses also opined that the tracks had been made by the Defendant's boots.

■ A guilty verdict may be based solely upon circumstantial evidence. *McCann v. State,* (1984) Ind., 466 N.E.2d 421, 423. From the evidence presented, the jury could reasonably infer that the Defendant, along with an accomplice, broke into Osborne's home with the intent to commit theft. That inference is supported by evidence that the home was ransacked and that Osborne's shotgun was removed from the house by Lee. *Combs v. State,* (1973) 260 Ind. 294, 299, 295 N.E.2d 366, 369. Moreover, Osborne's testimony that the man he apprehended in the woods was the same man that he had seen running across his yard and that Defendant's boots matched the footwear which had made the footprints left by the fleeing man is sufficient, in conjunction with other evidence, to identify the Defendant as one of the perpetrators of the crime. Finally, Defendant's flight from the scene may be considered as "consciousness of guilt," inasmuch as other evidence tends to show a flight in avoidance. *Frith v. State,* (1975) 263 Ind. 100, 111, 325 N.E.2d 186, 192 (concurring opinion). The evidence is sufficient to sustain the conviction. *Lee v. State,* (1981) Ind. App., 419 N.E.2d 825, 830–831.

### ISSUE III

Defendant moved for a mistrial after he had inadvertently been seen wearing handcuffs by two or three jurors as he left an elevator while being transported to the court from the county jail. The trial court denied the motion, and Defendant assigns such ruling as error, arguing that as a consequence of being viewed in handcuffs by the jurors he was denied a fair and impartial trial.

■ Defendant acknowledges our several decisions which hold that being seen by jurors while being transported in handcuffs is not grounds for reversal, absent a showing of actual harm; *see Misenheimer v. State,* (1978) 268 Ind. 274, 282, 374 N.E.2d 523, 529; *Johnson v. State,* (1977) 267 Ind. 256, 258–259, 369 N.E.2d 623, 624–625, *cert. denied,* 436 U.S. 948, 98 S.Ct. 2885, 56 L.Ed.2d 791; *Jessup v. State,* (1971) 256 Ind. 409, 412, 269 N.E.2d 374, 375; however, he urges this Court to reconsider those decisions and "to determine that any viewing by the jury of the defendant in handcuffs or restraints, however inadvertent, unless required for articulable security reasons, be determined to be error and to act as impinging upon the defendant's rights to a fair and impartial trial." (Brief of Appellant, p. 52). We are not, however, persuaded by Defendant's argument and decline to overrule existing case law.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.