Herbert **WADE**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 1284S501.

Supreme Court of Indiana.

April 3, 1986.

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Herbert Wade was convicted by a jury on June 22, 1984, of Murder of his two year old stepson. The Honorable William H. Miller sentenced him to fifty (50) years imprisonment. Wade now raises the following issues on direct appeal:

1. the trial court erred by denying a motion for change of venue due to pre-trial publicity;

2. the trial court erred by granting the State's motion for oral examination and impressions of Defendant's teeth;

3. the court erred by sending instructions into the jury room without rereading them;

4. the court erred by admitting gruesome photographs;

5. the court erred by admitting an officer's testimony regarding footprints;

6. the court erred by admitting Defendant's first statement made to police through a redacted transcript and his following two statements by tape recordings;

7. the court erred by imposing a manifestly unreasonable sentence.

Defendant, Herbert Wade, lived in Evansville, Indiana with his wife, Vicki Sanford Wade, his eleven (11) month old son, Joey, and his two year old stepson, Jeffery. Kelley Brantley, a friend of Mrs. Wade, lived with them periodically, and cared for the children on occasion. Defendant, his wife, and Kelley worked at various Burger Kings in Evansville.

On December 9, 1983 Vicki Wade and Kelley Brantley left for work at 5:00 p.m., while Defendant attended the children. Vicki and Kelley had not noticed any major injuries to Jeffery at this time with the exception of a light colored bruise on his inner thigh caused by a fall. At 8:00 p.m. Defendant knocked on a neighbor's door and asked her to help him because Jeffery had fallen and hit his head on an air conditioner. Mrs. Goodman, the neighbor, returned with Defendant and found Jeffery unconscious, his upper lip swollen, his pulse hard to detect, his jaw clamped so

tightly shut she could not administer cardio-pulmonary resuscitation, his body badly bruised, and his back marked with a shoe imprint. When Goodman told Defendant to call an ambulance, he called his father instead. After a second request, Defendant finally called an ambulance.

Jeffery was unconscious when the paramedics arrived and had a low pulse and respiratory rate. The paramedics transported the boy immediately to the hospital and en route observed an abrasion on his forehead, numerous bruises, and dark purple markings around his genitalia.

Dr. Michael, the physician who attended Jeffery in the emergency room, classified Jeffery's condition upon arrival as critical due to a massive head injury. He described the boy's body as badly bruised, his respiratory rate abnormally slow, and noted the boy was unconscious. An intercranial monitor was placed in Jeffery's skull and medication administered in an attempt to reduce the swelling of his brain. The majority of bruises were fresh, including a large bruise over the genital area and a shoe imprint on the upper right buttock. Jeffery never responded to any medical treatment, and passed away when removed from the respirator on December 13, 1983.

Dr. John E. Pless, a forensic pathologist, testified that death was caused by brain swelling which forced the brain stem to be forced down into the opening of the spinal column, killing brain tissue. He also testified that a pattern wound discovered on the back of the child's head was like the print made by an athletic shoe. Michael Oliver, a police officer specializing in the area of footprint comparisons, testified that the imprints made on Jeffery's head matched the sole of a shoe belonging to Defendant. Dr. Pless referred the case to Dr. Samuel Standish, a forensic odontologist and professor of oral pathology for an opinion regarding what appeared to be bite marks across Jeffery's pubic area. Dr. Standish concluded that the injury was a human bite mark and based upon impressions made from Defendant's teeth, concluded that Defendant probably made the marks. Upon presentation of this evidence, the jury convicted Defendant of murder.

I

█ Appellant Wade's initial assignment of error is that adverse pre-trial publicity caused the community from which the jurors were chosen to be so prejudiced that he could not receive a fair trial. Consequently, he argues the trial court's denial of his Motion for Change of Venue was reversible error and an abuse of discretion. It is well established that for a defendant to show good cause necessary to warrant a discretionary change of venue, he must produce evidence of community bias or prejudice sufficient to convince the trial court he cannot obtain a fair trial in that county. We will not reverse a trial court in its judgment on this issue where there was no reason to believe that any juror was so affected by preconceived opinions as to have been unable to judge the defendant wholly on the law and evidence adduced at trial. *Linder v. State* (1985), Ind., 485 N.E.2d 73, 76. A fair trial can be held even though a juror might have entertained a preconceived opinion as to the defendant's guilt if the juror could lay aside his impression and render a verdict on the evidence presented in court. *Linder, supra; Grimes v. State* (1983), Ind., 450 N.E.2d 512, 517.

█ In response to Appellant's Motion for Change of Venue, the trial court recognized the case was widely publicized, but took the motion under advisement until trial when the prospective jurors could be questioned regarding their exposure to such publicity. The trial commenced six months later. Prior to commencement each prospective juror who remembered hearing or reading anything about the case was questioned individually by the court during *voir dire*. Of the twelve (12) jurors selected, most remembered no details regarding the case. Nonetheless, all of them stated they would be able to presume Defendant was innocent until proven guilty beyond a reasonable doubt by evidence adduced at trial. The record of *voir dire*

demonstrates sufficient grounds supporting the trial court's conclusion that the jurors were able to set aside any preconceived notions of guilt and render a verdict based upon the evidence. Consequently, the trial court did not commit reversible error by denying Appellant's Motion for Change of Venue.

## II

Appellant next argues that the trial court's granting of the State's Motion for Oral Examination and Impression of Defendant's Teeth without first finding probable cause violated his Fourth Amendment right against unreasonable searches and seizures. In addition, he asserts his Fifth Amendment right against self-incrimination was violated in that he was compelled to give incriminating evidence.

Prior to trial the State filed a Motion for Oral Examination and Impression of Defendant Wade's Teeth. Attached was an Affidavit of Probable Cause made out by Officer Steven Holder. The affidavit informed the court, *inter alia,* that during the autopsy of Jeffery Sanford the pathologist found marks on the child's groin which appeared to be bite marks. Accordingly, the State requested an oral examination and impressions of Defendant's teeth to help determine the source of the marks. After a hearing, the court granted the motion and ordered Defendant to submit to an oral examination and the taking of impressions.

Appellant's assertion that the trial court violated his Fifth Amendment right against self-incrimination by granting the motion is neither supported by any authority nor legal argument. Accordingly, Appellant has waived his right to have this argument addressed. Ind.R.App.P. 8.3(A)(7); *Howard v. State* (1985), Ind., 481 N.E.2d 1315. Nonetheless, we choose to address Appellant's contention. It is well settled that although self-incrimination protects a defendant from testimonial compulsion, it does not protect against compulsory submission to purely physical tests such as fingerprinting, body measurements, hand-

writing and voice exemplars. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1311. The latter acts are distinguishable from acts constituting testimonial compulsion in that they do not require an incriminating communicative act by a defendant. In *Schmerber v. California,* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the United States Supreme Court held that compelling a defendant to submit to a blood test for reasons of determining intoxication did not constitute testimonial compulsion or a violation of the defendant's Fifth Amendment rights. In *Schmerber,* the Court addressed the defendant's Fifth Amendment claim as follows:

"In the present case, however, no such problem of application is presented. Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone. *Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds."* (emphasis added).

*Schmerber,* 384 U.S. at 765, 86 S.Ct. at 1832, 16 L.Ed.2d at 916. Likewise, in the instant case the oral examination and impressions made of Defendant's teeth, produced an incriminating product of compulsion, but were neither Appellant's testimony nor evidence relating to some communicative act or writing by Appellant and thus were not inadmissible on privilege grounds.

Appellant also argues that the oral examination and the taking of impressions was in violation of his Fourth Amendment right because probable cause was lacking to support the court order requiring him to comply with the examination. He supports his argument by contending the following facts were the only evidence presented to

the trial court upon which it issued an order for oral examination and impressions. First, Dr. Pless, the forensic pathologist, considered bruises on the boy's groin area to possibly be teeth marks. Second, Dr. Standish, the forensic odontologist and expert in teeth marks, had requested impressions but had not rendered an opinion that the bruises were teeth marks because he had not viewed the body. Third, the court order did not expressly make a finding that probable cause existed. However, these are not, as Appellant contends, the only facts from which the trial court concluded probable cause existed to believe that oral examinations and impressions of Defendant's teeth would lead to incriminating evidence. The record reveals that an affidavit supporting the State's motion provided a substantial basis for the judge to find probable cause. John Althoff, the affiant and an officer of the Evansville Police Department, stated in the affidavit that he had been informed that the autopsy of the child "revealed that there were marks on the child's groin area which appeared to be bite marks," and that this information had been supplied to the Evansville Police Department by Dr. John Pless, who performed the autopsy. The affidavit further stated that Jeffery Sanford had died as a result of blunt force to his head. The following also was contained in the affidavit:

> "Your affiant was informed by David Davies and Ted Mattingly of the Evansville Police Department that they interviewed Herbert Wade and Wade told them that he was alone with the child in the evening of December 10, 1983, that he became angry at the child, struck him several times with his hand, and kicked him."

■ Under the Fourth Amendment a determination of probable cause is required to be made by a judge before a search warrant can be issued. If issued upon sworn oral testimony or affidavit, there must be a substantial basis therein for the judge to find that probable cause exists to believe the proposed search will result in the discovery of evidence of an offense. *Short v. State* (1982), Ind., 443 N.E.2d 298.

In the instant case, the trial court's order was tantamount to a search warrant and since Appellant's person was being subjected to a search, the probable cause requirement existed. Contrary to Appellant's argument, however, the facts contained in the affidavit accompanying the State's motion, logically provided a substantial basis from which the trial court could conclude an oral examination and impressions made of Appellant's teeth would lead to evidence that he was responsible for the teeth marks on the child's body. Since the trial judge was equipped with sufficient facts to constitute probable cause, Appellant's Fourth Amendment right against unreasonable searches and seizures was not violated.

### III

■ After the jury retired to deliberate, the foreman requested the definitions for murder, voluntary manslaughter, and involuntary manslaughter. Over the defendant's objection and without rereading the instructions, the court sent all of the instructions initially read to the jury into the jury room. Appellant now argues pursuant to *Cornett v. State* (1982), Ind., 436 N.E.2d 765, that the trial court committed reversible error by sending the instructions into the jury room. However, Appellant's citation to *Cornett*, wherein we reversed and remanded because jury instructions were sent into the jury room, is misplaced. The case at bar does not present a record reflecting the instructions contained extraneous information, which compelled us to reverse in *Cornett*. It is neither alleged nor shown, as it was in *Cornett*, that the instructions revealed their sources, had extraneous markings, or contained matters which may not have been included in the instructions as they had been read. Furthermore, Appellant fails to acknowledge that we have held it harmless error for the court to send the final instructions into the jury room during deliberations where the crucial requirement of first reading the instructions in open court in the presence of the parties and their attorneys has been met. *Denton v. State* (1983), Ind., 455

N.E.2d 905. The record shows that the judge personally read all of the instructions to the jury before they began deliberating. Because the trial court fully read the instructions before the jury began deliberation and because it has not been shown that the instructions contained extraneous markings, it was harmless error for the trial court to send the instructions into the jury room without first rereading them to the jury.

### IV

Appellant next alleges that the trial court erred by admitting prejudicially gruesome pictures and that the trial court's loss of such pictures has precluded Appellant from exercising his right to appeal his conviction. Appellant further contends that the State failed to establish the proper foundation for admitting these exhibits.

 Appellant's first argument regarding admission of State's Exhibits 1, 3, 8, and 12 is that these photographs of the victim's body were unduly repulsive, gruesome and prejudicial in relation to their probative value. However, the record reveals that neither State's Exhibit 3 nor 8 were ever shown to the jury. Since it is Appellant's burden to demonstrate prejudicial harm to merit reversal on appeal, it is impossible for Appellant to meet this burden with regards to Exhibit 3 and 8. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. Prejudice cannot have occurred when the jury was never exposed to the evidence which allegedly caused it. Thus, any issues regarding these exhibits are moot. As regards State's Exhibits 1 and 12, it is well settled that the admission of photographs is within the sound discretion of the trial court and will not be disturbed except for an abuse of discretion. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1225, *reh. denied.* The admissibility of a photograph is dependent upon whether it is a competent and relevant aid by which the jury can orient itself to best understand the evidence submitted to it. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 935. State's Exhibit 1, showing a petechial bruise on the right side of the victim, and State's Exhibit 12, showing lacerations on the victim's nose, were taken in the emergency room. They were admitted to illustrate the testimony of the emergency room physician, Dr. Stevenson. Dr. Stevenson, in addition to describing these injuries, testified that the bruise was fresh. This meant it was sustained within the prior eight to ten hours, a time frame in which Appellant was alone with the victim. These exhibits assisted the jury in understanding Dr. Stevenson's observation of injuries and demonstrated how the injuries were inconsistent with those Appellant testified the victim sustained. Accordingly, State's Exhibits 1 and 12 were relevant and valuable aids to the jury in better understanding the evidence at trial. Appellant further argues that because these exhibits were lost while in the court reporter's custody, our inability to view the actual photographs denies him due process by denying him his right to an appeal. However, Appellant has the burden of demonstrating reversible error on appeal. *Lowery, supra.* Ind.R.App.P. 7.2(C) sets out the procedure to be used by the party claiming error when either a part or the entire transcript is unavailable or a transcript has not been made. This rule allows in part that, "a party may prepare a statement of evidence of proceedings from the best possible means, including his recollection." In *Ruetz v. State* (1978), 268 Ind. 42, 373 N.E.2d 152, *cert. denied,* 439 U.S. 897, 99 S.Ct. 261, 58 L.Ed.2d 245, we addressed the same issue before us now and held it is not a denial of due process to require compliance with Ind.R.App.P. 7.2(C) when part of the record of proceedings is unavailable on appeal. Appellant here neither complied with Ind.R.App.P. 7.2(C) nor did he set out in his appellate brief in what respects the photographs were prejudicially gruesome. In light of the overwhelming evidence introduced at trial supporting the jury's verdict, the total absence of evidence that these photographs were gruesome and Appellant's failure to comply with Ind.R.App.P. 7.2(C), we find Appellant has failed to establish that the

photographs in issue were prejudicially gruesome.

 Finally, Appellant alleges that the State failed to properly identify and authenticate the photographs in issue. State's Exhibit 1, however, was properly identified as accurate by Dr. Stevenson. A proper foundation is laid for photographs if there is testimony from a reliable source that the photographs were accurate representations of the things they are intended to portray. *Broadus v. State* (1986), Ind., 487 N.E.2d 1298. Thus, the trial court's overruling of Appellant's objection on authentication grounds was proper. Regarding State's Exhibit 12, the trial court conditionally admitted the photograph allowing the State to authenticate it at a later time. Even when an objection to testimony is made and sustained, if the testimony is on record any error is waived if no motion is made to strike that testimony. *Dean v. Dean* (1982), Ind.App., 439 N.E.2d 1378. Although the defendant's objection to the State not laying a proper foundation was sustained, a search of the record reveals he failed to move to strike the testimony when the State later failed to authenticate the photograph. His failure to object at a later time constituted waiver of this issue.

### V

Appellant's next assignment of error is that the trial court erroneously qualified Officer Oliver as an expert and admitted his opinion testimony. Officer Oliver testified that he was a Police Specialist for the Indiana State Police, assigned to laboratory work on "trace evidence," including physical comparisons. He testified that the past seven years of specialized work, he had qualified as an expert at trial fourteen (14) times for the State of Indiana. His educational background and training consisted of a Bachelor of Arts degree in Mathematics, Indiana State Police Recruit School, and specialized training at MaCrone Research Institute in Chicago. Officer Oliver testified concerning a comparison he made between an enlarged photograph of Appellant's tennis shoe and a photograph of the wound on the victim's head. He used calipers to compare the sole impression on the victim's head to the sole of Appellant's shoe. He then opined that Appellant's shoe could have made the wound on the victim's head and that there were no inconsistencies in the measurements.

 Appellant's argument is twofold. He first argues Officer Oliver did not qualify as an expert, and second, that Officer Oliver's opinion testimony was not based on accurate information. Appellant's first argument is incorrect. An expert witness is one who, by reason of education or special experience, has knowledge respecting a subject matter about which persons having no particular training are incapable of forming an accurate opinion or making a correct deduction. *Moody v. State* (1983), Ind., 448 N.E.2d 660, 664. The trial court has broad discretion in determining qualifications of experts and in admitting opinion evidence. Also, the sufficiency of foundation for opinion evidence is a matter of sound discretion and will be reversed only for an abuse of discretion. *Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1336. Officer Oliver's credentials and experience lent the jury more precision in assessing the identity of the marks on the victim's head than had the jury not heard his testimony. Moreover, a non-expert as well as an expert may give his opinion, provided he bases his conclusion on measurements or the peculiarities of the footprints. *Hartlerode v. State* (1984), Ind., 470 N.E.2d 716, 717. Appellant's second contention is that Officer Oliver's methodology was imprecise and faulty because he worked from photographs and had never examined the actual body of the victim. Consequently, Appellant argues, Oliver lacked the ability to render an accurate opinion because of distortions which may have been caused by a two dimensional photograph of a three dimensional subject, the victim's head. In addition to the measurements, the jury could observe similarities in patterns from the photographs. Defense counsel vigorously cross-examined Oliver regarding the reliability of his obser-

vations and opinion, enabling the jury to attach whatever weight and credibility they deemed appropriate to his opinion. *See Hartlerode, supra.* Accordingly, the trial court neither abused its discretion in qualifying Officer Oliver as an expert nor in admitting his opinion testimony.

### VI

Prior to trial, Appellant gave three separate tape recorded statements to the police, each with different versions of what transpired the night Jeffery Wade was beaten to death. At trial, the parties agreed that certain parts of the first statement needed to be redacted. Over Defendant's objection, the trial court allowed the State to read the redacted version of the first statement to the jury and play the tape recorded versions of the second and third statement. Appellant now alleges on appeal that the inconsistency of reading the transcript of the first tape and playing the other two tapes inherently imparted to the jury that they were not hearing all of the first statement.

■ The best evidence of a conversation is a clearly audible tape recording of it. *Duncanson v. State* (1979), 181 Ind. App. 370, 391 N.E.2d 1157, *trans. denied.* However, there are exceptions to this rule, such as when the recording is lost. Then the transcript may be read to the jury in lieu of playing the tape recording if the accuracy of the transcript is established. *Boyd v. State* (1982), Ind., 430 N.E.2d 1146, 1149. The case at bar constitutes another exception. In the instant case, a proper foundation was laid for the transcript, despite Appellant's allegation to the contrary. The record reveals Appellant repeatedly testified that the transcript was an accurate representation of the recorded statement, although he changed his mind and testified otherwise later in the proceedings. Further, a police officer testified he had read the transcript while the tape recorder played the recorded statement and the transcript accurately reflected the recorded statement. The trial court had sufficient evidence before it to find that the tran-

script was an accurate representation of the recorded statement.

■ To be entitled to reversal, Appellant must affirmatively show there was error prejudicial to his substantial rights. *Wagner v. State* (1985) Ind., 474 N.E.2d 476. At trial Appellant requested a tape recording, erasing and leaving blank those portions redacted. The transcript read to the jury contained no blank portions indicating omitted material. It is difficult to conceive of how a tape recording, with erased portions, would be less indicative to a jury that the statement is incomplete than the reading of the statement not indicating any omissions. Consequently, Appellant has failed to demonstrate any prejudicial error to his substantial rights.

### VII

■ Appellant finally claims the fifty (50) year sentence, consisting of the presumptive sentence of forty (40) years for murder enhanced by ten (10) years for aggravating circumstances, is manifestly unreasonable. This Court will not revise a sentence authorized by statute unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sen. 2; *White v. State* (1984) Ind., 460 N.E.2d 132. Pursuant to Ind.Code § 35-38-1-7 (Burns Supp. 1985), the trial court properly found as aggravating circumstances, first, that the defendant murdered a two year old child, second, the child was unable to defend himself, and third, the imposition of a lesser sentence would depreciate the seriousness of the crime. The aggravating circumstances listed in Ind.Code § 35-38-1-7 do not limit the factors that the court may consider in imposing sentence. Ind.Code § 35-38-1-7(d); *Bish v. State* (1981), Ind., 421 N.E.2d 608, *reh. denied.* After expressing statutory aggravating circumstances, the trial court further stated:

> "The Court feels that ... further finds that there was no provocation for the murder of this child, and further that the evidence indicated during the trial that there had been one prior physical abuse

of the child, and frankly, no one will ever know, except you, Mr. Wade, the circumstances surrounding the death of this child. You gave at least three versions, and I don't know if any of those versions are true; therefore, the Court finds that the aggravating circumstances outweigh the mitigating circumstances and now sentences you to fifty (50) years to the Indiana Department of Corrections."

As mitigating factors the court found the defendant had no prior criminal record and appeared to be a law abiding person. It is within the trial court's discretion to determine the weight to be given in each case to aggravating and mitigating circumstances and accordingly increase or decrease the sentence as provided by statute. *Bixler v. State* (1985), Ind., 471 N.E.2d 1093, *cert. denied,* —— U.S. ——, 106 S.Ct. 106, 88 L.Ed.2d 86. The trial court did not abuse its discretion in finding the aggravating circumstances outweighed the mitigating circumstances. Further, in light of the factors expressed by the trial court and the evidence adduced at trial of this brutal offense, we find Appellant's sentence is not manifestly unreasonable.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.